EDWARDS v. KEITH, Internal Revenue Collector.

(District Court, E. D. New York. July 9, 1915.)

1. INTERNAL REVENUE &2—INCOME TAX—CONSTITUTIONALITY.

Act Oct. 3, 1913, c. 16, 38 Stat. 114, imposing a tax upon incomes, is not unconstitutional as applied to the tax upon returns made in 1914, and estimated or based upon the income for a certain definite preceding period, though such period was partially prior to the enactment of the law, since, if a person is liable for the tax in the future, the method of its computation as estimated upon the past does not invalidate the tax.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 2; Dec. Dig. &2.]

2. INTERNAL REVENUE &7—INCOME TAX—WHEN INCOME ACCRUES.

Act Oct. 3, 1913, c. 16, § 2, div. A, subd. 1, 38 Stat. 166 (Comp. St. 1913, § 6319), imposes an annual tax upon the entire net income arising or accruing from all sources to citizens or residents of the United States. Section 2, div. B (section 6321), provides that the net income of a taxable person shall include gains, profits, and income derived from salaries or compensation for personal service, of whatever kind and in whatever form paid, or from businesses, commerce, gains, profits, and income derived from any source whatever. By a contract between an insurance company and an agent he was to receive, as compensation for soliciting insurance, certain specified percentages of the premiums paid on policies written through his solicitation for the first and subsequent years for 20 years from the date of each policy; the contract providing that the commissions should accrue only as the premiums were paid to the company, and that the liability for any particular commission would terminate if the policy ceased to be in force. Held, that the specified percentages of premiums for the second and subsequent years of the life of policies, issued prior to the enactment of the statute, constituted income which accrued when such premiums were paid, and were taxable as such.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 870; Dec. Dig. &7.]

3. INTERNAL REVENUE &7—INCOME TAX—INCOMES SUBJECT TO TAX.

The liability of the agent's percentage of such premiums to the income tax imposed by Act Oct. 3, 1913, was not affected by the fact that the agent hired subagents and maintained an office force, and that his percentage to some extent represented merely deferred returns, which he had already anticipated and partially expended for office expenses; nor was the liability to the tax affected by the fact that such expenses were paid before the passage of the statute.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 8–10; Dec. Dig. &7.]

4. INTERNAL REVENUE &2—INCOME TAX—CONSTITUTIONALITY.

Act Oct. 3, 1913, is not unconstitutional as applied to the agent's percentage of such premiums on policies issued prior to the passage of the act.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 2; Dec. Dig. &2.]

---

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Charles Jerome Edwards against Henry P. Keith, as Collector of Internal Revenue for the United States, First District, State of New York. On demurrer to the amended complaint. Demurrer sustained, and complaint dismissed.

Jones, McKinny & Steinbrink, of Brooklyn, N. Y. (Meier Steinbrink, of Brooklyn, N. Y., and Charles A. Woods, of Pittsburgh, Pa., of counsel), for plaintiff.

Melville J. France, U. S. Atty., of Brooklyn, N. Y., for defendant.

CHATFIELD, District Judge. The plaintiff has brought an action against the defendant, as collector of internal revenue for this district, to recover the sum of $263.90, paid upon October 30, 1914, under protest, and demanded back upon allegations that the tax was illegally levied and collected, and that the law, if so worded as to cover the items taxed, is unconstitutional. The amended complaint was filed on the 3d day of February, 1915, and demurrer interposed upon the 4th day of February, 1915, alleging that the amended complaint did not state facts sufficient to constitute a cause of action. The facts thus admitted, and upon which the questions of law are raised, in so far as they had to do with the question, are as follows:

The plaintiff has been an agent in the employment of the Equitable Life Assurance Society from a time before the 14th of February, 1889. On that day he entered into a contract (a copy of which is set forth with the complaint), and subsequently, upon the 16th of March, 1895, October 21, 1898, December 18, 1899, and November 26, 1906, he made further contracts (copies of which are also annexed to the complaint), under which he was to canvass personally and through his subordinates for applications of individuals to take out life insurance with the said society. By the terms of these various contracts it was agreed with him that he should receive compensation on premiums on policies issued by the society, to persons secured through the plaintiff's instrumentality, to the extent of certain specified percentages of the ordinary premiums paid for the first year of the policy taken out, and other percentages on the ordinary premiums of the second and subsequent years. The many other provisions of these contracts and their varying rates of payment need not be considered, beyond noticing that they cover ordinary life policies, policies for paid-up insurance (after a certain number of premiums), and many differing forms of policies. The contracts set forth the exact percentages of the premiums which the plaintiff would receive from each kind of policy.

The complaint alleges that, as shown by the text of these contracts, the plaintiff was obligated to perform no further services and to do no work in connection with the contract, after the issuance of the policy and the payment of the first premium thereon, although there is a provision in the contract to the effect that the agent may be called upon to assist in defending any item as to which litigation might arise. All the work of collecting the premiums and taking care of the matters covered by the policy subsequent to the payment of the first premium is to be done by the company, and the plaintiff was to receive therefrom, for the term of 20 years from the date of each policy while

in force (and provided the plaintiff act exclusively for the society for the term of 3 years), the commissions above referred to. It is provided in the contract that the "commissions shall accrue only as the premiums are paid to said society in cash." The liability for any particular commission was to terminate if the policy ceased to be in force for the period of six months.

It has been assumed by both parties to this action, and may be taken as a matter of common knowledge, that the rate of commission provided for in the contract was less than or different from what would have been agreed upon as the plaintiff's compensation, if this had been secured to him in one amount, upon the taking out of the policy or the payment of the premium for the first year.

The income tax in question was assessed and collected upon the particular premiums paid (upon policies previously secured through the instrumentality of the plaintiff) to the Equitable Life Assurance Society between March 1, 1913, and December 31, 1913, and therefore claimed by the government to "accrue" within that period, because they immediately gave the plaintiff the right to a percentage of that premium, whether then physically paid over to him, or collected by him from the society, or not.

According to the allegations of the complaint, the items taxed were all percentages of premiums actually received by the society during the period and under the terms of the contracts set forth; but all of these items so taxed were admittedly the commissions provided for by the contracts from premiums actually paid upon the second or subsequent years in the existence of the policies themselves.

The plaintiff therefore claims that these amounts which he, under contract, was to receive as premiums, when paid upon policies from time to time after the first year of the existence of the policy, were deferred payments, in the nature of partial or distributed payments, of a sum already the property of the plaintiff, transferable or assignable by him, and to which he had a complete and vested right, capable of being definitely ascertained and estimated as soon as the contract relating to that particular policy became effective. He admits that the cessation or default of the payments of premiums in any year subsequent to that in which the policy was taken out would thereby stop the payment to him of further commissions, and would terminate the contract with respect to that particular policy, so soon as the policy ceased to be "in force." But he contends that this shows the distributed payments to be like installments upon an amount already secured to and vested in him as accrued income, or like the receipt of a series of portions of principal, the ownership of and the right to which had been held by the individual throughout the entire period.

[1] It is unnecessary to discuss the general provisions of the Income Tax Law passed October 3, 1913 (38 Statutes at Large, p. 166, c. 16), nor is there room for argument as to the general constitutionality of the tax upon returns made in 1914 and estimated or based upon the income of an individual for a certain definite preceding period, even though that period be partially prior to the date of the enactment of the law. If the person is liable for the tax in the future, the method of its computation as estimated upon the past does not invalidate the

tax. Stockdale v. Insurance Companies, 87 U. S. (20 Wall.) at page 331, 22 L. Ed. 348.

[2] The government therefore contends that the payment of premiums under the above contracts, for all years after the first, in the case of each policy, which payments happened to be made between March 1, 1913, and December 31, 1913, made payable to the plaintiff at once certain sums, which by the language of the contract were called "commissions," and which by the language of the contract were to "accrue" to the plaintiff at the time of this payment and not before. It further claims that the express statement of the contract, to the effect that "commissions shall accrue only as the premiums are paid to said society in cash," brings each of these commissions within the scope of the income tax, under subdivision 1, division A, section 2, providing "that there shall be levied," etc., a tax "upon the entire net income arising or accruing from all sources," etc. The later provision that net income of a taxable person shall include gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from businesses, commerce, gains, profits, and income derived from any source whatever (section 2, division B), would plainly cover the commissions which we are discussing, if they are to be classified as profit or income arising or accruing within the months specified.

In the ordinary sense, compensation payable in installments for services rendered during the period would be income arising or accruing within that period. The use of the word "accrued" furnishes a likeness between the statute and the phrase quoted from the contracts in question, and this was the basis of decision No. 2011 by the Treasury Department, issued July 28, 1914, providing that commissions on renewal premiums for insurance and income when received shall be taxed as income for the period in which received. It will be noticed that this decision refers to renewal premiums, and is thus speaking of premiums paid after the first year that the policy is in effect. In case, therefore, the Treasury Decision is correct, the demurrer to the complaint must be sustained.

The government at the outset of its argument presents the situation shown by the converse of the plaintiff's position. If he should to-day, under his present contract with the Equitable Life Society, procure an individual who took out a large policy, to run for at least as long as 20 years, then, on or before the 1st of March, 1916, the government asks the plaintiff if he admits that he would be compelled to file a return including such commissions upon all the future premiums of that policy as constituting his gain, profit, or income for the year 1915, either arising or accruing during the year, as compensation for his services. Such construction of the law might follow as a corollary to the plaintiff's contention, and he might be called upon to include, for the year 1915, the other 19 commissions upon the so-called renewal premiums in which he is interested, whether or not they are paid in the future and the insurance continued in force for the entire 20-year period of this contract. If this were done, and the party insured should cease to pay the premium after the first year, the plaintiff would

have paid a tax upon a considerable amount of so-called earnings or income which he would never receive, and as to which the deferred payment would be rendered impossible. If this should be done, and if payment of premiums on any policy should be stopped during any particular year, the plaintiff would have to deduct or mark off from his income, as loss of income, at the close of that year, the total commissions upon the balance of the premiums which still remained unpaid upon that particular policy. If each year his income exceeded the maximum deduction, he might in the long run balance up the burden of the tax.

But the plaintiff disclaims such construction. He further alleges, as to any policy now taken out and upon which commissions are earned, that the income accruing for each year is to be considered to include merely the amount of commission paid over upon the premiums actually paid. This latter proposition has been the contention of the government also, and it would seem to be the simpler and better rule as to all insurance secured, or as to all policies taken out, after January 1, 1914. But how can the plaintiff distinguish the premiums becoming due and upon which commissions became payable between October 3, 1913, and January 1, 1914, or those premiums paid between March 1, 1913, and the 1st of January, 1914? There would seem to be no reason for treating the commissions arising after a certain date as income and for holding that those before that date were principal.

The plaintiff has stated a number of specific illustrations, in which payments from time to time are merely deferred deliveries of shares or parts of the property itself, and in which the time of payment of the installment has not established the right thereto. He has cited in particular the case of Von Baumbach v. Sargent Land Co., 219 Fed. 31, 134 C. C. A. 649, which distinguishes between income and receipts in the form of periodic payments for ore, which was really principal.

The right to commissions throughout the 20-year period, upon renewal premiums, was held in the case of In re Wright (D. C.) 151 Fed. 361, affirmed 157 Fed. 544, 85 C. C. A. 206, 18 L. R. A. (N. S.) 193, to be, from the standpoint of property, something earned by the agent at the time of securing the business. It was therein held that the bankrupt could have transferred his property right or interest in these commissions at any time, and that therefore the right to receive such commissions upon premiums paid subsequent to the appointment of the trustee in bankruptcy passed to the trustee as to all policies taken out before the adjudication in bankruptcy.

The acquisition of property before adjudication in bankruptcy is the only question under consideration in the Wright Case. The word "property" in that sense has to do with the ownership and right of transfer of the bankrupt, and such right of transfer might be had in an income as well as in the specific capital or source from which it was derived. The plaintiff is seeking to construe the meaning of the word "property" as applied to the income discussed in the Wright Case just as if it were synonymous with "principal." But this does not follow. The right to receive an income might be secured by the payment of a sum of money, like that deposited for the sake of procuring

an annuity. The right to the annuity might be property available for creditors, and yet the annuity would be income within the meaning of the Income Tax Law, and would accrue or arise during the year of payment, instead of back at the time when the deposit of principal purchased the right to the annuity.

From the standpoint of bankruptcy law, the right to receive the income is the test from which, at any particular time, property which is to continue through the future shall be estimated. From the standpoint of the tax, the earning—that is, the performance or happening of the conditions or the happening of the circumstances which complete the obligation to pay the income—determines when the accrual is to be estimated for taxation purposes. Such income is not an asset of which he will be divested by default of the insured, although his contract might be so considered.

The worth or benefit of the policy to the society, as well as the amount of the return to the insured, depends upon the continuation of payment and the total amount received. If the payment of premiums is stopped, then the benefit to the society is decreased, the amount of insurance is either diminished or terminated, and the service rendered by the agent, for which he is to receive his commissions, is diminished in value. It is evident that his services to the society cannot be estimated from the amount of time or trouble expended in getting the business. His compensation is in no way based upon the difficulties and expense or the ease with which he secures the customer.

[3, 4] This brings up the only other practical objection, viz., that the plaintiff has hired a number of individuals and maintained a force in an office throughout the entire period since entering into the contracts offered in evidence, and that his compensation, in the form of commissions upon the premiums when paid, represented merely deferred returns, which he had already anticipated and partially expended for these office expenses. The plaintiff, therefore, urges that his income should not be taxed without regard to the expense to which he had previously been put in securing that income. From one aspect this argument is the same as if he should contend that, having invested a large amount in the purchase of an annuity, it should not be considered income because a part of the capital had gone therein.

To this extent the plaintiff's contention, that his expenses had previously been paid, would not affect its treatment as income. Nor does the fact that the capital was invested or the expenses paid before the passage of the law making the income taxable exempt the income. Its effect is certainly to diminish the income; but, if the income is taxable at all, any tax is a diminution in its amount, and the tax is not thereby rendered unconstitutional. Nor does the plaintiff's contention that the law taxing the income occurred long after the creation of the so-called property right to receive that income render it exempt from taxation. The plaintiff goes so far as to suggest that in the future the entire right to receive the income could be taxed at any time fixed by statute, but that as to the rights secured in the past, for the receipt of income extending over into the future, a tax upon the future installments of that income would be unconstitutional.

The court does not see how any contract right or property right has been guaranteed to the individual, exempt from taxation, merely because postponement of the receipt of the property has been continued until a time when the tax was imposed. If this rendered the tax invalid, then it would be necessary to guarantee to a person making the purchase of certain property as much income, so far as the effect of taxes is concerned, as he had at the time of making the purchase. This answers itself. If the plaintiff could approximate the amount of expense incurred or attributable to the particular item which he was including in his return, and could deduct that expense from the taxable income, he might be sustained in making such deduction before figuring the net income from past contracts; but the income would still be taxable for the net amount.

The demurrer must be sustained, and the complaint dismissed.