## UNITED STATES v. CHRISTINE OIL & GAS CO.

(District Court, W. D. Louisiana. September 8, 1920.)

No. 1028.

1. **Internal revenue ☞7—Deferred payments not taxable as "income."**

Within Revenue Act Oct. 3, 1913, levying a tax on the net income arising or accruing from all sources in the preceding calendar year, section 2G (b) of which requires the income to be ascertained by deducting from the gross amount of income received within the year expenses paid and losses sustained within the year, "income" includes only what has actually been received, so that a corporation which sold property at a profit during the year is not liable to taxation on deferred payments of the property not represented by notes or secured in any way.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

2. **Internal revenue ☞7—Treasury rulings cannot add to taxable income.**

The regulations and rulings of the Treasury Department, under its authority to make reasonable regulations for the execution of the Income Tax Law, cannot enlarge the net income of a corporation subject to the tax by the terms of the act.

Suit by the United States against the Christine Oil & Gas Company to collect a tax. Verdict directed for defendant.

Joseph Moore, U. S. Atty., of Shreveport, La.
J. D. Wilkinson, of Shreveport, La., for defendant.

GRUBB, District Judge. The question involved in this case is the right of the government to collect from the defendant an income tax on the deferred payments for the sale of oil leases. The deferred payments were the obligations of the Producers' Oil Company, a solvent corporation, not represented by notes or secured in any way. The sale undoubtedly established a profit on the transaction, represented by the difference between the cost, $115,000, and the sale price, $250,000. About $79,000 was paid in cash, and $25,000 thereafter out of the proceeds of oil. The corporation paid income tax only upon the payments actually received and was additionally assessed $1,328.13 on the unpaid part. The dispute arises as to the correctness of the additional assessment on the part that has never been received by the corporation. It may be conceded that the difference between the cost price and the sale price, if received during the tax year for which the additional assessment was made, would be income, subject to the tax.

[1] Section 2G (b) of the Act of October 3, 1913 (38 Stat. 114), prescribed the method of arriving at the income on which the tax against a corporation is to be assessed as follows:

"Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, * * * *received within the year* from

all sources, (first) all the ordinary and necessary expenses *paid within the year* in the maintenance and operation of its business and properties, including rentals, etc., "(second) all losses *actually sustained within the year* and not compensated by insurance or otherwise, including a reasonable allowance for depreciation by use, wear and tear of property, if any."

In the case of Mutual Benefit Insurance Co. v. Herold, 198 Fed. 199, 215, the District Court of the District of New Jersey, speaking of similar language in the Corporation Tax Law of 1909 (36 Stat. 112), which also used the word "received," said:

"This language seems clearly to indicate that the net income, which is the measure of taxation, means what has actually been received, and not that which, although due, has not been received, but its payment for some reason deferred or postponed."

The language of the act of 1913 with respect to deductions for expenses is "all the ordinary and necessary expenses *paid within the year*," and with reference to losses "all losses *actually sustained within the year*." In the case of Mutual Benefit Co. v. Herold, supra, the same court said of corresponding language of the act of 1909:

"Since, then, the language of the act is explicit in permitting only such deductions from the gross income as were *actually paid during the current year*, it would be strange, indeed, if on the opposite side of the account the company were charged with what it *had not received during the current year*. No reason appears or has been suggested for so radical and unwarranted a departure. Furthermore the word 'income' means, as already shown, that which has come in, and not that which might have come in, but did not. If expenditures mean what has been paid out, or outgoes, then income means what has come in, or receipts."

[2] The ruling of the Treasury Department is to the contrary. Treasury Decision 2137, promulgated January 30, 1915. However, the regulations of the Treasury Department could not enlarge the net income made subject to the tax by the terms of the act. The act levies the tax "upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation * * * organized in the United States" (section 2, subd. G [a], Act Oct. 3, 1913), and defines the net income to be that obtained by making certain deductions from "the income of such corporation, * * * received within the year from all sources." (Section 2, subd. G [b], Act Oct. 3, 1913). Actual receipt within the current tax year is a condition to the levy of the tax, by the terms of the act as construed by the courts. The authority of the Treasury Department to make reasonable regulations for the execution of the law would not confer on that department the power to add to the income, subject to the tax, as defined by the law. In the case of Edwards v. Keith, 231 Fed. 110–113, 145 C. C. A. 298–301, the Court of Appeals for the Second Circuit said:

"But no instructions of the Treasury Department can enlarge the scope of this statute, so as to impose the income tax upon unpaid charges for services rendered and which, for aught any one can tell, may never be paid."

What is there said of unpaid services applies with equal force to unpaid purchase money. If a seller accepts the notes of third persons in absolute payment, the rule would be different. But where the ef-

fect of the transaction is a mere promise to pay, and not an actual payment, it cannot be said to be income, until it has been actually received, and is not subject to be taxed as such until its actual receipt.

In United States v. Schillinger, 14 Blatch. 71, Fed. Cas. No. 16,228, the court said that:

"In the absence of any special provision of law to the contrary, income must be taken to mean money, and not the expectation of receiving it, or the right to receive it, at a future time."

In the case of U. S. v. Indianapolis, etc., R. R. Co., 113 U. S. 711–713 (Syl.) 5 Sup. Ct. 716, 28 L. Ed. 1140, the Supreme Court held that:

"Interest on bonds of a * * * corporation earned by the company during the year 1871, but payable by the terms of the coupons January 1, 1872, is not subject to the tax authorized by section 15, Act July 14, 1870 (16 Stat. 260), to be levied and collected for and during the year 1871"

—citing the case of Railroad Co. v. U. S., 101 U. S. 543, 25 L. Ed. 1068.

The general language of the Act of October 3, 1913, is:

"That there shall be levied, assessed, collected, and paid annually upon the entire net income arising or accruing from all sources in the preceding calendar year."

Upon the authority of the cases quoted from, this language, even though it were not restricted by that of paragraph (b) of subdivision G of the same act, would justify the imposition of the tax only upon income actually received during the tax year, as distinguished from that promised to be paid, but not in fact paid.

This conclusion requires the direction of a verdict for the defendant.