THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH B. MAYER, Relator, *v.* JOHN F. GILCHRIST and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, May 21, 1926.

Taxation — income tax — partnership of which relator was member sold interest in oil lease on installment plan by contract dated November 1, 1919 — payments were to run over more than one taxable year — rules of State Tax Commission promulgated under authority of Tax Law, § 383, cannot conflict with Tax Law — law does not permit Tax Commission to treat installment contract as closed transaction — relator taxable only on basis of income made and as actually received by partnership (Tax Law, §§ 359 and 364).

For the purpose of determining the net income of the relator, a member of a partnership, the State Tax Commission did not have the right to determine that an installment contract for the sale of an oil lease by the partnership, dated November 1, 1919, which ran over a period of more than one taxable year, was a closed transaction, and that the partnership and the relator individually and as a partner did not have the right to prorate or apportion the profit derived from the sale of an interest in said lease in proportion to the amount received by the partnership in said transactions in the years 1919 and 1920.

A rule of the State Tax Commission promulgated under the authority given it by section 383 of the Tax Law, purporting to justify the action of the Tax Commission in treating the sale as a closed transaction, cannot override the

Tax Law, which contains no provision authorizing the imposition of a tax on all income for the year in which the income was contracted for.

The relator, therefore, is taxable only on a basis of income made and as actually received by the partnership. (Tax Law, §§ 359 and 364.)

CERTIORARI issued out of the Supreme Court and attested on the 11th day of July, 1925, directed to John F. Gilchrist and others, constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in fixing the income tax payable by the relator for the year 1919.

*Phillips, Leibell & Fielding* [*Vincent L. Leibell* and *Marks F. Paschkes* of counsel], for the relator.

*Albert Ottinger, Attorney-General* [*Henry S. Manley, Deputy Attorney-General,* of counsel], for the respondents.

McCANN, J. Relator made an income tax return for the calendar year 1919 on which he reported a total taxable net income of $34,073.17 which was paid. The Texolean Company, in which the relator was a partner, filed a partnership return for the same year by which it appears that the relator's distributable share of the partnership net taxable profit for the year 1919 was $36,312.78 which has not been reported on the relator's return for 1919. The latter item is not disputed and is not involved on this review.

On the audit of the relator's return for the year 1919 the State Tax Commission, respondent herein, by a notice dated March 14, 1923, claimed an additional tax due of $6,663.97 based on the increase in relator's net taxable income amounting to $214,108.05. The sources of the alleged additional income were (a) relator's distributable share of the net profit in the Texolean Company, as audited by the State Tax Commission, and (b) the disallowance of certain deductions made by relator on his return for the year 1919 for loss sustained on sales of securities. The appellant states that only the former (a) is concerned on this review. Said notice of March 14, 1923, was later revised by the State Tax Commission upon an application for a review, to show a taxable net income of $211,660.22. The Commission having then determined to allow relator's deductions of $23,500 for loss in the Ohio Syndicate and $13,021 for loss in his investment in the Western New York and Pennsylvania Traction Company, the deficiency in tax claimed by the Commission on relator's 1919 return was thereupon computed at $3,544.36. In auditing the partnership return of the Texolean Company the distributable share of the income as shown on its return for the year 1919 was increased by the sum of $1,542,347.61 based on (1) a disallowance of $150,000 for depletion

of oil properties, and (2) the addition of $1,392,347.61 representing the balance of profit realized on the sale of certain interest in and to certain leases of oil property in Texas which balance of profit was reported on both the partnership's and relator's return for the year 1920 but which the respondents contend should have been reported as profit realized in 1919. This is a review of the determination of the board.

The sole issue is the right of the partnership and of relator individually and as a partner in said partnership to pro rate or apportion the profit derived from the sale of said oil interests and leases in proportion to the amount received by the partnership in said transactions in the years 1919 and 1920. The foregoing is a review of the facts and a statement of the proposition involved, as presented on relator's brief and with reference to which there is no dispute.

The transaction which is the basis of this controversy is a contract dated November 1, 1919, between the relator and one Wilson R. Page, acting for the partnership, the Texolean Company, as parties of the first part, and Phillip L. Poe as party of the second part, which provides for the sale of an undivided half interest in a farm and certain oil and gas leases on other lands in the State of Texas, the purchase price being $2,500,000 payable in installments as follows: $250,000 on the signing of the contract; $200,000, on December 1, 1919, and $300,000 on December 15, 1919, and the balance in eight monthly payments of $200,000 each, the first to be paid on January 1, 1920, and the remainder on the first day of each month thereafter, and the balance of $150,000 on the 1st day of September, 1920, all deferred payments to bear interest at the rate of six per cent from November 1, 1919.

It was agreed that the deed of a certain property known as the Anderson farm and the assignments of the leases to all the property located in the State of Texas, should not be recorded, but should be delivered on November 3, 1919, with a copy of this agreement to the Equitable Trust Company of New York, to be held until the said balance of $2,250,000 should be fully paid at the office of said Equitable Trust Company of New York, at which time the said trust company should deliver the said deed and assignments to the party of the second part, his nominee or assigns. When and as such payments were made by the second party to said trust company, the same should be immediately paid to said first parties. Provision was then made that in case of the default in the payment of any portion of the purchase price, the vendors should be entitled to sell the farm and leases and apply the proceeds to any part of the purchase price remaining unpaid, paying the overplus if any to the

vendee, and also provided for judgment for deficiency against such vendee or his assigns, and in case of any such sale the deed and assignments were to be redelivered to the vendors.

A further provision contained in said contract was to the effect that the purchaser should satisfy himself prior to January 1, 1920, concerning the validity of the titles which were warranted by the parties of the first part and that he should notify the Equitable Trust Company of New York that the validity of the titles had been so approved by his attorneys; furthermore, that pending the receipt of such authority from the vendee, the said trust company should hold the payments required to be made on December 1, 1919, and December 15, 1919. It appears from the record that the last two payments mentioned were in fact paid to the Equitable Trust Company on December 10, 1919, and December 15, 1919, respectively, but it was not until December 31, 1919, that the purchaser consented to release the said sums then being held by the said trust company pursuant to the terms of the contract and that the partnership did not receive credit for the sum of $250,000 thereof until January 5, 1920.* It further appears that early in December, 1919, the purchaser who had until January 1, 1920, to satisfy himself concerning the validity of the titles, reported the same unsatisfactory, and it was not until 1920 that titles to the undivided interest in the farm and several leases were actually conveyed to the purchaser upon making the final payments under the contract.

The contention of the respondents is that the sale in question must be treated as a closed transaction in the year 1919 and the profit be treated as a profit derived in that year and that the sale may not be treated as an installment transaction with the profit prorated for the years 1919 and 1920 in proportion to the payments in cash.

The Tax Law as then existent provides that a person shall be taxed on his distributive share, whether distributed or not, of the net income of the partnership for the taxable year. (Tax Law, § 364, as added by Laws of 1919, chap. 627.) That, however, does not apply to the present situation unless we conclude that the income under discussion is " for the taxable year." Section 359 of the Tax Law (as added by Laws of 1919, chap. 627), known as the Personal Income Tax Law, provides that income of the nature which is the subject of this controversy shall be taxable in the year in which it is received by the taxpayer.

Section 383 of the Tax Law (as added by Laws of 1919, chap. 627; since amd. by Laws of 1921, chap. 477) in force in 1919 authorizes the State Comptroller (now State Tax Commission) to make rules

---

* Motion for reargument was denied with memorandum *Per Curiam.* (See *post,* p. 803.) — [Rep.

and regulations necessary for the enforcement of article 16 of the Tax Law, known as the Personal Income Tax Law. These have been adopted and are very comprehensive and while they are to be treated and used as rules and regulations for the administration of the Tax Law, they cannot at any time be allowed to conflict therewith; therefore, no rule or regulation can be adopted which will not conform with the sections of the Tax Law above referred to. A tax was imposed in this case on the theory that it was a closed transaction during the year 1919 and the rules of the Tax Commission with reference to installment transactions are cited in support of that theory, but such rules cannot be made to change the direct language of the Tax Law. Such rules provide that a tax shall be imposed as a closed transaction even where the contract of sale in question provides for payments on the installment plan which run over more than one year. This contract was of the latter class and there is no provision of law which authorizes the imposition of a tax on all income in the year in which the income was contracted for. It is unnecessary to discuss articles 36 and 37 of the rules and regulations of the Tax Commission. They are not applicable to the facts before us. Our attention has been called to the case of *United States* v. *Christine Oil & Gas Co.* (269 Fed. 458) where it is said: " But where the effect of the transaction is a mere promise to pay, and not an actual payment, it cannot be said to be income, until it has been actually received, and is not subject to be taxed as such until its actual receipt." It may be noted that this was the attitude taken by the Commissioner of Internal Revenue in assessing the Federal tax. In arriving at the conclusion that this was not a so-called closed transaction, it may be noted that this was a case where the negotiations were closed but not the transaction itself. As proof of this, we have: (1) The deferred payments unsecured; (2) the provision for withholding the payments of December first and December fifteenth until the validity of the title was acceptable; (3) the warranty of title given as a condition for the surrender of the premises; (4) the withholding of the deed and the leases until the final payment; (5) the provisions which naturally would follow as a conclusion of law to authorize the foreclosure of a contract in case of default in payment.

The determination of the State Tax Commission should be annulled and the matter remitted to the Commission to compute the tax in question as claimed by the relator, with fifty dollars costs in favor of the relator.

All concur.

Determination annulled, and matter remitted to the State Tax Commission to compute the tax in question as claimed by the relator, with fifty dollars costs and disbursements to the relator.