EDWARD S. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SCRANTON TRUST CO. AND LOUISE E. W. JONES, EXECUTORS, ESTATE OF THOMAS E. JONES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7230, 7231. Promulgated April 26, 1927.

1. Value of certain bonds received by the petitioner in the taxable year determined.

2. Prior to March 1, 1913, petitioners rendered services to a corporation as its officers. It was at all times understood that salaries were to be paid for such services, but the amount thereof was not determined until 1920. In 1920 petitioners received full payment for all salaries earned from 1903 until January 1, 1920. *Held*, that the amounts so received, which represented salaries earned prior to March 1, 1913, were income in 1920.

*Douglass D. Storey, Esq.*, and *J. F. W. Heinbokel, C. P. A.*, for the petitioners.

*W. Frank Gibbs, Esq.*, for the respondent.

The Commissioner has determined deficiencies in income taxes for 1920 as to Edward S. Jones and Thomas E. Jones, in the respective amounts of $6,387.62 and $6,349.19. Two issues are in controversy: (1) Whether amounts alleged to have been earned as salaries prior to March 1, 1913, and received after that date, are income of the year in which received, and (2) the value of certain bonds received by the petitioners in the taxable year. The parties agree that the two cases should be consolidated for hearing and decision.

### FINDINGS OF FACT.

Edward S. Jones and Thomas E. Jones organized the Blue Creek Coal & Land Co , hereinafter referred to as the company, and, from May 1, 1903, to January 1, 1920, continuously acted as president and treasurer of the same. Each made income-tax returns on the receipts and disbursements basis.

The company is a corporation holding coal land in fee and by lease. It mines and sells coal and leases lands for coal, oil, gas, and timber exploration and production.

The petitioners were officers and directors of the company and during all the time from May 1, 1903, were actively engaged in its affairs. It was understood by all the directors, some twelve or fifteen in number, that each of the petitioners should receive a salary for his services to be paid whenever the financial condition of the company permitted. Salaries of such officers were discussed in directors' meetings, but no amounts were determined, accrued on the books, or paid prior to March 1, 1913.

Prior to January 1, 1920, after discussion and consideration of the claims of the petitioners for salaries, the directors appointed a committee of three of their own number to consider the claims and report their findings and recommendations thereon to the full board. On January 5, 1920, the committee made, and the directors unanimously adopted, the following report:

Your Committee, especially appointed to ascertain the compensation due the President and Treasurer, for services rendered the Company during its existence, to January 1st, 1920, beg to report as follows:

That Edward S. Jones, President, be paid the sum of $65,000.00 in full for his services to January 1st, 1920, less any and all indebtedness owing by him to the Company.

To Thomas E. Jones, Treasurer, the sum of $35,400.00 in full for his services to January 1st, 1920.

Further, that the payment of these two officers be made as follows: $43,000.00 Kanawha & West Virginia Railroad Company Bonds at $60.00, the balance to

be paid in Blue Creek Coal & Land Company bonds at $60.00, the coupons to be detached and cancelled to December 1st, 1919.

Pursuant to the above report the company, on April 20, 1920, made the following described payments to the petitioners:

(a) *To Edward S. Jones:*

1. $25,000.00 par value 50 Year Five Per Cent First Mortgage Gold Bonds of Kanawha & West Virginia Railroad Co., bonds due in 1955, with all unmatured interest coupons attached to each bond;

2. $57,000.00 par value First Mortgage Five Per Cent Thirty Year Sinking Fund Bonds of the Blue Creek Coal & Land Company due 1938, to each of which bonds there were attached interest coupon No. 24 due June 1, 1920, and all subsequent coupons, but not interest coupons Nos. 9 to 23 inclusive maturing between the period December 1, 1912 to December 1, 1919 and unpaid on April 29, 1920, nor coupons Nos. 1 to 8 inclusive, which matured prior to December 1, 1912; and

3. $16,200.00 in cash.

(b) *To the late Thomas E. Jones:*

1. $18,000.00 par value 50 Year Five Per Cent First Mortgage Gold Bonds of Kanawha & West Virginia Railroad Co. bonds due in 1955, with all unmatured interest coupons attached to each bond; and

2. $41,000.00 par value First Mortgage Five Per Cent Thirty Year Sinking Fund Bonds of the Blue Creek Coal & Land Company, due in 1938, to each of which bonds there were attached interest coupon No. 24 due June 1, 1920 and all subsequent coupons, but not interest coupons Nos. 9 to 23 inclusive maturing between the period December 1, 1912 to December 1, 1919 and unpaid on April 29, 1920, nor coupons Nos. 1 to 8 inclusive, which matured prior to December 1, 1912.

At April 20, 1920, the $1,000 bonds of the Kanawha & West Virginia Railroad Co. had a value of $600, and the $1,000 bonds of the Blue Creek Coal & Land Co. had a value of $360, each.

In their respective income-tax returns for 1920, the petitioners included in gross income only that part of the payments received for salary that covered the time between March 1, 1913, and January 1, 1920. Upon audit of such returns, the Commissioner held that the entire payment on account of accrued salaries was income to the petitioners in the year 1920, and that, at the date received, the $1,000 bonds of the company had a readily realizable value of $360, and determined the deficiencies here in controversy.

## OPINION.

LANSDON: The value of the bonds of the company at April 20, 1920, is the only question of fact in controversy here. The evidence shows that some sales of such bonds, with all past due coupons attached, were made about that time at the price of $530 for each $1,000 bond. The bonds received by the petitioners had all interest coupons maturing before January 1, 1920, detached, and, obviously, were worth less than if they had carried all the overdue coupons.

The petitioners contend that each overdue coupon was worth its face value of $25, and that, as 15 such coupons had been detached, the value of each bond was $550, less 15 times $25, or $175. We can not agree with this reasoning or the conclusion based thereon. The company, as the evidence discloses, had large and valuable properties; it was a going concern under the management of owners; and, at the date here involved, it had just received substantial sums from the sale of certain of its assets. The bonds in question were secured by a first mortgage on the property of the company, and there is nothing in the evidence that raises any presumption that they could not or would not be paid in full at maturity. The petitioner argues that the fact that all interest coupons maturing before the transaction here in question had been detached reduced the value of the bonds at the date of payment proportionably to the number of such coupons removed. We are unable to give any weight to this contention. A purchaser of bonds is concerned not with past but future interest accumulations and with capital values. We are of the opinion that the evidence adduced by the petitioners is insufficient to establish a value of the bonds in question less than that determined by the Commissioner, and that the receipt of such bonds in the taxable year was a closed transaction resulting in income based on that value.

The facts as to the second issue are all stipulated and only a question of law is left for our consideration. The petitioners continuously asserted their claim for salaries, and the company repeatedly acknowledged such claim in principle, but, until 1920, did not fix the amount thereof. On that date the claims were compromised and payments in the respective designated amounts of $65,000 and $45,000 were made as set forth in our findings of fact. The respondent holds that, as the petitioners kept their accounts and made their income-tax returns on the receipts and disbursements basis, the entire amount was income in the year it was received. The petitioners contend that at March 1, 1913, each had a valid and undisputed claim against the company as salaries for services rendered prior to that date, and that the payment of such claims, in 1920, did not result in taxable income, since the amounts so received were their property at March 1, 1913, and their receipt in the taxable year, therefore, constituted a return of capital.

The respondent contends that the payments in question come within the statutory definition of " gross income " as set forth in the Revenue Act of 1918, as follows:

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term " gross income "—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of

the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period * * *.

The language of the quoted section is clear and unmistakable. It includes practically every source of income. If there could be any doubt, either as to the meaning of the statute or the intention of Congress, it has been definitely removed by judicial interpretation. The facts here are similar to those in the case of *Woods* v. *Lewellyn*, 252 Fed. 106, in which the plaintiff sought to recover Federal taxes paid on renewal commissions on insurance policies which he had earned prior to the taxable year in which they had been received and included in gross income by the petitioner. In that case the court said:

The commissions in controversy appear to us to be embraced by this widely inclusive language. No doubt they were earned by work done and money spent in the earlier years; the agent's work was complete when he obtained the application and the society issued the policy; his right to commission on future renewals came then into being, and he himself was required to do no more. He had earned his pay, and had received a part of it; to the rest, he then acquired a right, such as it was, but no determination could then be made how much the rest would be, and in no event could he receive it except in annual installments. Although the right had value, it lacked an essential element; no renewal premium might ever be paid, and in that event he would receive nothing more; or renewals might be paid only in part, and then he would be entitled to commission on that part only. The insured might die before a given renewal fell due, or he might allow his policy to lapse, and in either event the right of the agent to future commissions perished. The right, therefore, was contingent; his contracts so provided, for they declared that commission should accrue only as premiums should be paid in cash, and certainly until such payment should be made he had no collectible claim against the society. He had a property right that had value, but contained also an element of risk, and unless he turned it into money it remained contingent. The act taxes money, or its equivalent, or its representative, and a contingent right such as this is not "income" in the sense used by the act. The question has been decided against the plaintiff in the Second Circuit. *Edwards* v. *Keith* (D. C.) 224 Fed. 585, affirmed 231 Fed. 110, 145 C. C. A. 298, L. R. A. 1918A, 498, certiorari refused 243 U. S. 638, 37 Sup. Ct. 402, 61 L. Ed. 942.

That Congress is within its powers in the imposition of such taxes is held in *Lynch* v. *Hornby*, 247 U. S. 339, in which the court declared

that "Congress was at liberty * * * to tax as income without apportionment, everything that became income, in the ordinary sense of the word, after the adoption of the amendment." See also, *Hays v. Gauley Mountain Coal Co.*, 247 U. S. 189.

In the instant proceeding, even if the rights of claims possessed by the petitioners had any value at March 1, 1913, it is apparent that such value was not only inchoate and unliquidated, but that it was also contingent. The company might never have been financially able to discharge its obligations whether formally or informally incurred. It was not immune to the common business hazards and, to that date, it had not earned profits sufficient to meet its ordinary and necessary operating expenses and pay the interest on its bonds. It is admitted that its liability for salaries to its officers had never been determined by formal corporate action. There were from 12 to 15 directors, and their informal action raises no presumption, as in the case of a close corporation, that such action was regular. Whether, in the circumstances disclosed by this record, an informal agreement which was no more than a mere general understanding could have been disavowed by subsequent formal corporate action is, at the best, an open question.

That the services for which the payments in question were made were not rendered in the taxable year in which the salaries were earned is not material, and does not affect the taxability of compensation therefor when received. In *Edwards* v. *Keith* 231 Fed. 110, the court said "The statute does not provide that the ʻpersonal services,ʼ compensation for which is to be considered income, must be rendered in the same year in which the compensation is received." See also *Jackson* v. *Smietanka*, 272 Fed. 970.

It is also argued in behalf of the petitioners that the inclusion of the entire amounts in question in taxable income for the year in which they were received would result in an incongruous distortion of the incomes of the petitioners for such years. Since it is agreed that each of the petitioners kept his accounts and made his income-tax returns on the cash receipts and disbursements basis, this argument is not persuasive. In such circumstances distortion of income is no more than an accounting term which loses all materiality in the face of the fact that taxpayers on such basis voluntarily elect to include all actual realizations of money, or money's worth, as income for the years in which they are received.

*Judgment will be entered for the respondent.*