## JACKSON v. SMIETANKA, Internal Revenue Collector.

(Circuit Court of Appeals, Seventh Circuit.  March 12, 1921.)

No. 2794.

**1. Internal revenue ☜7—Receiver's compensation, determined at end of term, "income" for that year.**

Where a receiver, by order of the court, was paid a sum monthly for his services, with liberty to apply for additional compensation at the end of the receivership, such final allowance, made at the end of five years, *held* "income" for the then current year, within Revenue Act 1918, § 213 (a), being Comp. St. Ann. Supp. 1919, § 6336⅛ff (a), and not distributable for income tax purposes through the preceding years of service.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

**2. Receivers ☜199—Nunc pro tunc entry, changing terms of order for compensation, unauthorized.**

Where, on termination of a receivership, a final order allowing compensation to the receiver was made, a nunc pro tunc entry, made more than a year afterward, on an ex parte application by the receiver, changing the terms of such order, without any claim of mistake or error in the original order, *held* unauthorized and ineffective as against the United States to affect the income tax due from the receiver on such allowance.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; George T. Page, Judge.

Action by William J. Jackson against Julius F. Smietanka, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 267 Fed. 932.

M. F. Gallagher, of Chicago, Ill., for plaintiff in error.

James R. Glass, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge.  Jackson, plaintiff, filed a declaration to recover income taxes paid by him under protest. Defendant's demurrer was sustained; plaintiff declined to plead over; and this writ of error challenges the consequent judgment.

[1] From May, 1913, to April, 1918, plaintiff served as a railroad receiver under appointment of the District Court at Chicago. Plaintiff accepted the employment under an order providing that he "be paid on account of his services at the rate of $2,000 per month" and that on termination of his trust he "shall be at liberty to apply for such further compensation as to the court may then appear reasonable and just." For the years 1913 to 1917, inclusive, plaintiff made returns on the basis of "income received," and, respecting this receivership, he had neither a business system nor books nor unpaid allowances for service from which he could have made returns of "income accrued." In 1918 plaintiff was allowed and paid "as final payment for all services rendered by him during the receivership herein the additional sum of $100,000." On March 14, 1919, plaintiff filed his return for 1918,

showing the receipt of said $100,000, and also filed amended returns for 1913 to 1917, inclusive, in which he claimed that pro rata parts of said $100,000 were "accrued income" of those years. On April 16, 1919, the collector rejected the amended returns and demanded normal taxes and surtaxes on the $100,000 so received in 1918. Plaintiff then prepared, and on April 22, 1919, presented to the District Court, a petition for a nunc pro tunc order showing that the additional compensation was earned and had accrued in equal monthly installments throughout the receivership, and the order as tendered was entered. Thereupon plaintiff, on May 28, 1919, paid $26,826 under protest, and subsequently brought this action to recover the difference, $19,973.

Unless some effect is to be given to the nunc pro tunc order, the collector was right. Section 213 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛ff) requires a return of "income derived from salaries * * * or compensation for personal service," and provides that the amount thereof "shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of account permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period." That subdivision permits a return "upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income." Not only do the facts of this case demonstrate that there is no permission in that subdivision to save plaintiff from the direct mandate of section 213, but article 32 of Regulations 45 (authorized by section 1309 of the act [Comp. St. Ann. Supp. 1919, § 6371½j]) explicitly requires that, "where no determination of compensation for personal services is had until the completion of the services, the amount received is income for the calendar year of its determination." Plaintiff from time to time during the receivership had applied to the court for additional compensation, and the court had always refused. Manifestly such refusals were in accordance with the original order of appointment, which plainly denied any intermediate right to additional compensation and left the question of what additional compensation, if any, would be fair to be determined when the trust ended and to be dependent upon the outcome of the administration. And whether the regulation means that the compensation is income of the year in which the determination of the amount is made or is income of the year in which payment is made, is immaterial in the present case, for both determination of amount and payment thereof occurred in 1918.

[2] A year after plaintiff had finally stepped out of the District Court and a month after his liability to make a true return of his income for 1918 had become fixed, plaintiff reappeared in court and obtained the aforesaid nunc pro tunc order. Respecting the general

question of a court's authority to make nunc pro tunc orders or judgments, plaintiff cites certain authorities,[1] which we supplement by calling attention to others.[2]   In regard to the present order it suffices to say:   There was no misprision of a clerical officer; no new facts; no newly discovered evidence concerning former issues of fact; no failure in the court to enter the original order exactly as the court intended to enter it; even if the petition for the nunc pro tunc order had tendered an issue which interested the original parties (the railroad company and its creditors), no steps were taken by the aforetime receiver to have them join issue; the petition was heard ex parte; and as to the government all the matters in the District Court were res inter alios.

The judgment is affirmed.

---

[1] Foster's Fed. Pr. (6th Ed.) vol. 2, §§ 447, 447a, 448; Lewis v. Holmes, 224 Fed. 410, 140 C. C. A. 8; Farmers' & Merchants' Bank v. Arizona M. S. & L. Ass'n, 220 Fed. 1, 135 C. C. A. 577; Acord v. Western Pocahontas (C. C.) 156 Fed. 989; Kaw Valley Drainage District v. U. P. Rld. Co., 163 Fed. 836, 90 C. C. A. 320.

[2] Brooks v. Ry. Co., 102 U. S. 107, 26 L. Ed. 91; Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; In re Wight, 134 U. S. 136, 10 Sup. Ct. 487, 33 L. Ed. 865; Hickman v. Ft. Scott, 141 U. S. 415, 2 Sup. Ct. 9, 35 L. Ed. 775; Gagnon v. United States, 193 U. S. 451, 24 Sup. Ct. 510, 48 L. Ed. 745; Wetmore v. Karrick, 205 U. S. 141, 27 Sup. Ct. 434, 51 L. Ed. 745; Brown v. United States, 196 Fed. 351, 116 C. C. A. 171.