**McPHERSON v. HELVERING, Commissioner of Internal Revenue.**

**No. 5751.**

Court of Appeals of the District of Columbia.

Argued Oct. 12, 1933.

Decided Nov. 13, 1933.

Albert S. Lisenby, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and S. Dee Hanson, Sp. Assts. Atty. Gen. and C. M. Charest, John R. Gaskins, and M. B. Leming, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This appeal involves income taxes for the calendar years 1922, 1923, and 1924, which were assessed against appellant under the Revenue Act of 1921, c. 136, 42 Stat. 227, 237, § 213 (a), and the Revenue Act of 1924, c. 234, 43 Stat. 253, 267, § 213 (a), 26 USCA § 954 (a).

Section 213 (a) of each act reads as follows:

"Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the taxpayer. * * * *"

The material facts as found by the Board of Tax Appeals are substantially as follows:

Appellant and his brother, John A. McPherson, were the sole members of the partnership of George L. and John A. McPherson, hereinafter called the partners, organized in 1906. In the years 1906 to 1910, the partners, being experienced timber operators, organized certain syndicates, composed of other persons, for the purpose of acquiring timberlands in the state of Oregon, with the expectation of selling them at a profit. When such a syndicate was organized, a contract was executed between the syndicate members as parties of the first part and the partners as parties of the second part, whereby the syndicate agreed to furnish sums of money to the partners to be invested in such lands; the partners were to purchase the lands with the money provided by the syndicate members, and to use their best judgment in making the purchases; the title to the lands, when purchased, was to be taken in the name of the Detroit Trust Company, as trustee, to be held in trust for the syndicate members in proportion to the respective amounts contributed by them to the purchase price; the partners were to receive for their expenses 50 cents per acre for certain parts of the land purchased and $1 per acre for other parts; the partners were to do all the work reasonably necessary for the care and protection of the lands and for the prevention of trespass, and were to advise the syndicate when to sell particular tracts of land, and were to attend to the selling of the same; when the lands or parts thereof were sold, the total amounts invested in the purchase thereof, and all sums paid for taxes and other necessary expenses, were

to be deducted from the selling prices, and the difference was to be considered as net profit; the partners were to receive one-fourth of such net profit "if, when, and as fast as" the various tracts were sold; and the residue was to be distributed by the trustee to the syndicate members in proportion to their respective contributions.

Various tracts of land were purchased under these contracts prior to March 1, 1913, but no part was sold prior to that date. However, the lands had appreciated in value prior thereto, to an extent which would have produced for the partners an estimated sum of $300,000 if the land then had been put to sale.

Afterwards, certain tracts were sold in the years 1922, 1923, and 1924, for sums which entitled the partners to participate in the profits. In determining their income for the sales for income tax purposes, the partners deducted from the gross amounts actually received by them a proportionate amount of the March 1, 1913, value of their rights as estimated under the agreements. The Commissioner of Internal Revenue disallowed such deductions, increased the taxable income of each partner for the years in question, from which action the present appeal was taken.

The partners kept their books and filed their tax returns on the cash receipts and disbursements basis.

On the basis of these findings the Board of Tax Appeals sustained the determination of the Commissioner and held that the amounts received during the taxable years under the employment contracts were taxable in their entirety, when received, without any allowance for a proportionate part of the estimated value of March 1, 1913, of the rights of the partners under the contracts. The Board accordingly entered an order redetermining the deficiencies for the years in question, and from the order so entered appellant took this appeal.

The contention of the appellant is to the effect that on March 1, 1913, he owned capital assets under the contract equal to the sum which he would have received had the lands then been sold at their estimated value of that date; that when his income taxes for the years 1922, 1923, and 1924, came to be assessed, they should have been assessed only upon so much of the income then received by him as was in excess of the value of such capital assets on March 1, 1913.

We cannot sustain this contention. There is no term in the contract which fixed March 1, 1913, as a point of settlement between the parties regardless of whether the lands had been sold by that time or not. On the contrary, no profits had accrued to appellant under the contracts in any present or specific sum on that date. Payment of profits to the appellant was to be made only when and as fast as the lands were sold. On March 1, 1913, no part of the lands had been sold and consequently no right to any profit from the transaction had accrued to appellant. Nor was it then certain that any income would accrue to him, for the selling price of the lands might decline to such an extent as to permit of no profit upon the transaction taken as an entirety. The payments to be made to the appellant were for services and were to be made when the services were completely performed, and were to be determined by and paid from the proceeds actually received by the trustee for the syndicate members.

This view is consistent with established authorities. In Edwards v. Keith (C. C. A.) 231 F. 110, 112, the plaintiff, an insurance agent, prior to March 1, 1913, wrote policies of insurance under agreements with the insurance company entitling him as compensation for his services to a certain commission on the first premium paid by the assured and a percentage on any future premiums. The contracts contained a provision that "commissions shall accrue only as the premiums are paid in cash." The court held that under the Income Tax Act of 1913 (38 Stat. 114) the commissions paid to the plaintiff after March 1, 1913, on business solicited prior thereto were taxable income in the years when received, stating further:

"The statute does not provide that the 'personal services,' compensation for which is to be considered income, must be rendered in the same year in which the compensation is received. See, also, Jackson v. Smietanka (C. C. A.) 272 F. 970."

In Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, the court held that, under the Income Tax Act of 1913, dividends declared and paid in the ordinary course by a corporation to its shareholders after March 1, 1913, whether from current earnings or from a surplus accumulated before March 1, 1913, were taxable to the individual shareholders as income, under the surtax provision. This case reversed the decision in Lynch, Collector, v. Hornby (C. C. A.) 236 F. 661, wherein it was held that dividends received by a stockholder from the conversion into money and the distribution in a subsequent year of property owned by the corporation on March 1, 1913, and which was on that date worth the amount subsequently received therefor, was

not "income" accruing during the year of distribution and was not taxable under the act. Cf. Woods v. Lewellyn (C. C. A.) 252 F. 106; Workman v. Commissioner (C. C. A.) 41 F. (2d) 139; E. S. Jones' Case, 6 B. T. A. 1048; J. Noble Hayes' Case, 7 B. T. A. 936. The fact that the contract rights in the present case had a determinable value on March 1, 1913, does not alter the rule, as may be seen from a reading of the cited cases.

The decision in the case of Eldredge v. United States (C. C. A.) 31 F.(2d) 924, upon which the appellant relies is not applicable to the present case. It relates rather to deductions for depreciation of an ore property from the annual royalties received by the lessees thereof.

The decision of the Board of Tax Appeals is affirmed.