THE AMERICAN FORK & HOE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60681. Promulgated February 20, 1936.

*John H. Watson, Jr., Esq., John T. Scott, Esq.*, and *Robert W. Wheeler, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, and *Curtis Risley, Esq.*, for the respondent.

1142

1144

OPINION.

Van Fossan: In this opinion we will discuss the contested issues in the order hereinabove set forth.

ISSUE I.

The petitioner contends that under section 141 (a), (d), and (e) of the Revenue Act of 1928,[1] it is entitled to include the Cronk & Carrier Manufacturing Co. in its consolidated income tax return for the fiscal year ended June 30, 1929.

The petitioner bases its contention upon the statutory definition of an "affiliated group" which is "one or more chains of corporations connected through stock ownership with a common parent corporation." The chain here begins with the petitioner as the parent owning all the stock except qualifying shares of the General Land & Industrial Co., Ltd., which in turn owned all the stock except qualifying shares of the Welland Vale Manufacturing Co., which in turn owned all the stock except qualifying shares of Cronk & Carrier Manufacturing Co., which completes the chain. All of these corporations, according to petitioner, were members of the affiliated group, and while the two intervening corporations were foreign, that fact does not exclude the Cronk & Carrier Manufacturing Co. from the consolidated return under section 141 (e),

---

[1] SEC. 141. CONSOLIDATED RETURNS OF CORPORATIONS—1929 AND SUBSEQUENT TAXABLE YEARS.

(a) *Privilege to file consolidated returns.*—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year, in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

\* \* \* \* \* \* \*

(d) *Definition of "affiliated group".*—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations. As used in this subsection the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

(e) A consolidated return shall be made only for the domestic corporations within the affiliated group. An insurance company subject to the tax imposed by section 201 or 204 shall not be included in the same consolidated return with a corporation subject to the tax imposed by section 13.

because the latter company is in fact a domestic corporation, organized and existing under the laws of the State of New York. In its brief the petitioner asserts that the only possible argument against including the Cronk & Carrier Manufacturing Co. in the consolidated return is the provision of section 238 of the Revenue Act of 1928 which provides that "a foreign corporation shall not be deemed to be affiliated with any other corporation within the meaning of sections 141 or 142."

Petitioner, in its principal brief, relied on our decision in *Manus-Muller & Co.*, 30 B. T. A. 1015, where it was held that foreign corporations may be included in the affiliated group, but are precluded from joining in a consolidated return made for the domestic corporations within the group. In that case a foreign corporation owned all of the stock of two domestic corporations. The Board held the three corporations constituted an affiliated group and allowed the two domestic corporations to file a consolidated return.

Since the hearing in this case, however, the Board's decision in the cited case was reversed by the Circuit Court of Appeals for the Second Circuit (*Commissioner* v. *Manus-Muller & Co.*, 79 Fed. (2d) 19), that court holding that the prohibition in section 238, *supra*, could not be ignored and that the express provisions of that section must prevail. The Supreme Court on January 6, 1936, denied certiorari, 296 U. S. 657. This decision by the Circuit Court of Appeals of the Second Circuit disposes of the arguments advanced by petitioner and, therefore, on this issue, the respondent must be affirmed.

ISSUE II.

During the period December 1, 1928, to June 30, 1929, the petitioner paid $70,392.89 of obligations assumed by the Investment Co. under its sublease dated August 13, 1923. During this same period the Investment Co. paid petitioner $29,000 on account, leaving a balance due petitioner at June 30, 1929, of $41,392.89. The petitioner contends that this balance should not be accrued as income because it was uncollectible, it being urged that the Investment Co. was insolvent and in all probability the account would never be collected.

The petitioner adduced evidence to show that there was a serious deflation in real estate values in Cleveland during 1926, 1927, and 1928, that every effort was made to operate the Union Building and the garage at a profit, but that despite every effort rentals and other income from the building and garage were insufficient to meet the obligations the Investment Co. had assumed. The financial condition of the latter company was established by a balance sheet as of December 31, 1928, which reveals book assets of over $731,000 and liabilities, exclusive of capital stock and reserves, of over

$856,000. The principal book asset was leaseholds and buildings in the sum of over $678,000, which undoubtedly represented values prior to the deflation of 1926, 1927, and 1928. While an excess of liabilities over assets does not necessarily mean permanent insolvency, that fact, together with the known fact of receivership of the Investment Co., the $41,392.89 default in rental obligations during the taxable year, and the fixed yearly disbursements required under its sublease, discloses the serious financial situation that existed on June 30, 1929. Considering the facts known on June 30, 1929, we are of the opinion that petitioner is justified in its contention that in all probability the $41,392.89 of rentals due would never be received.

A taxpayer on the accrual basis can not be charged with income if there exists good reason for believing that the income can not be collected. *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34; *Oregon Terminals Co.*, 29 B. T. A. 1332; *Emanuel Solomon Ullmann*, 30 B. T. A. 764; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730, 749, and cases there cited. Here, when the ground rent, taxes, interest, and bond retirement obligations fell due the Investment Co. was unable to pay these obligations, which fact, with the other known factors at June 30, 1929, convinced petitioner that the unpaid balances thereof would never be collected. Subsequent events proved the correctness of this belief. The amount owed to petitioner steadily increased until August 1931, when the petitioner repossessed the leaseholds and buildings, at which time the Investment Co. was over $123,000 in arrears on its obligations under the lease agreement of August 13, 1923. It is our opinion that in the instant state of facts petitioner's income should include only the cash actually received from the Investment Co. during the taxable year.

## Issue III.

The final issue is whether petitioner is entitled to deduct a portion of the $186,000 advanced to the W. F. Tubbs Co. The petitioner has fixed the amount of its claimed deduction, $54,468.28, by taking the excess of the liabilities of the Tubbs Co. over its assets as shown by the balance sheet of that company at June 30, 1929.

The right to deduct a portion of a debt is provided for by section 23 (j) of the Revenue Act of 1928.[2] The statutory requirements

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such a debt to be charged off in part.

set forth therein are different from the statutory requirements for deducting the entire debt. The statute says that when the Commissioner is satisfied that a debt is recoverable only in part, he *may* allow such debt to be charged off in part. In deducting a portion of a debt the taxpayer is under no duty to make the charge-off, but must satisfy the Commissioner that he is entitled to the deduction claimed. Failure of the Commissioner to allow the deduction gives the taxpayer a right to have the Commissioner's ruling reviewed to determine whether or not the deduction should have been allowed. *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320; *Allie M. Turbeville*, 31 B. T. A. 283; *Ross* v. *Commissioner*, 72 Fed. (2d) 122, reversing *Frank P. Ross*, 27 B. T. A. 1062; *Henry R. Huntting*, 32 B. T. A. 495. See also *Olympia Harbor Lumber Co.* v. *Commissioner*, 79 Fed. (2d) 394, affirming 30 B. T. A. 114.

It is to be observed that petitioner could designate three of the Tubbs Co's. five directors; that it had a first mortgage on all the property and assets of the Tubbs Co.; that it financed and promoted an expansion program for the Tubbs Co. which failed to produce the desired results; that it was the sole creditor of the Tubbs Co. on June 30, 1929; that the assets of the Tubbs Co. were not worth more than the values placed upon them in the balance sheet; that the liabilities exceeded the assets of the Tubbs Co. by $54,468.28; that for the years 1928 and 1929 the Tubbs Co. had net losses of $26,613.51 and $28,124.92, respectively, and we have the testimony of petitioner's vice president that in his opinion the advances to the Tubbs Co. were 40 to 50 percent bad at June 30, 1929.

Subsequent to June 30, 1929, the evidence shows that petitioner acquired in August 1929, all the Tubbs Co's. capital stock for $5,000, which was designated the "nuisance value" of the stock; that additional loans were made to the Tubbs Co. to the extent that on May 28, 1931, the Tubbs Co. owed petitioner $209,687.04; that on that date petitioner purchased all the property and assets of the Tubbs Co., except cash; that the assets so purchased were not worth more than the depreciated values appearing on the Tubbs Co's. books; that the petitioner's books reflect the charge-off in May 1931 of $113,-624.41, being the balance of the notes of the Tubbs Co. after crediting the amount owed with the depreciated value of the assets acquired; and that after May 28, 1931, the petitioner continued to operate the Tubbs Co. as a branch of the American Fork & Hoe Co.

From the foregoing summary of facts, we are of the opinion that the Commissioner should have been satisfied that only a portion of the $186,000 loaned by petitioner was recoverable, and that his failure to allow the deduction constituted error. It was apparent at June 30, 1929, that petitioner would never recover all the sums advanced to the Tubbs Co. The yardstick used to measure the portion

of the aggregate loans that was worthless, is the difference between the assets and liabilities. The petitioner was the sole creditor of the Tubbs Co. and the assets were worth no more than the values carried on the Tubbs Co.'s books. The petitioner's only opportunity to recoup its loans over and above the assets would be from the earnings of the Tubbs Co. It appears, however, that despite petitioner's efforts to expand the business of the Tubbs Co. net losses resulted for 1928 and 1929 and the failure of the expansion program was conceded as early as 1928. The events occurring subsequent to June 30, 1929, corroborate the contention of the petitioner that this portion of its advances to the Tubbs Co. was worthless at June 30, 1929.

The present situation differs from that before us in *Estate of James N. Gamble*, 32 B. T. A. 892, in that here only a partial charge-off is claimed. Our observations in that case related to a claim of entire worthlessness of the advances in question.

On this issue, therefore, we sustain the contention of the petitioner. Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Murdock, concurring: My views on the question of whether an affiliated group may contain a foreign corporation, and whether the domestic corporations within the group may join in a consolidated return, under section 141 of the Revenue Act of 1928, were fully set forth in *Manus-Muller & Co.*, 30 B. T. A. 1015. The Circuit Court of Appeals for the Second Circuit considered the question and reversed the decision of the Board, 79 Fed. (2d) 19. The court there properly pointed out at the conclusion of its opinion that doubts on the question must be resolved against the taxpayer. The interpretation which I placed upon the provisions of the act, including section 238, was not entirely free from doubt. The question is a complicated one and probably has been settled for all practical purposes by the decision of the Appellate Court in *Commissioner* v. *Manus-Muller & Co.*, *supra*.