*Decision will be entered under Rule 50.*

C. J. WRIGHTSMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91973.    Promulgated August 23, 1939.

*Raymond Tollett, Esq., R. B. Cannon, Esq.,* and *Harry C. Weeks, Esq.,* for the petitioner.

*James L. Backstrom, Esq., James H. Yeatman, Esq.,* and *M. L. R. Wade, Esq.,* for the respondent.

504

## OPINION.

BLACK: The facts in the instant case show that the salary of $50,000 was credited to petitioner by the Wrightsman Oil Co. at the end of 1936 rather than being paid to him in cash. The corporation, however, was thoroughly solvent and able to pay and the petitioner, although on the cash basis, makes no point that the salary was not paid to him in 1936.

The only question involved, therefore, is whether the entire $50,000 credited to petitioner by the company as salary for the year 1936 is community income or whether 357/365 thereof is petitioner's separate income. Petitioner contends that the entire salary is community income for the reason that the board of directors did not vote it to him until after he and his wife had moved from the noncommunity property State of Oklahoma and had established their legal domicile in the community property State of Texas, and that there had been no prior agreement thereto that petitioner would receive any salary for the year 1936. Petitioner contends that the $50,000 salary thus credited to him is just as much community property as the $50,000 dividends declared and paid him on the same date by the company, which the Commissioner has treated as community income. The respondent contends that the origin or inception of the right to the salary occurred while the petitioner and his wife were domiciled in

Oklahoma; that the salary was earned ratably throughout the year; that the ripening of the right must be held to relate back to its incipiency; and that the portion earned while the petitioner and his wife were residents of Oklahoma must, therefore, be held to be petitioner's separate property and income.

Questions relating to the ownership of property acquired after petitioner and his wife established their legal domicile in Texas must, of course, be decided by the laws of that state. *Poe* v. *Seaborn*, 282 U. S. 101. See also articles 4627, 4613 (as amended by Acts of 1929, 41st Legislature, p 66, ch. 32, sec. 1), and 4619 (as amended by Acts of 1927, 40th Legislature, p. 219, ch. 148) of Vernon's Annotated Texas Statutes, which are printed in the margin.[1]

Speer, in his Law of Marital Rights in Texas, 3d ed., p. 254, said:

The status of the property of marital partners is determined by the time and circumstances attending its "acquisition." It is therefore helpful to keep in mind what is meant by "acquired." The term signifies the origin or inception of the right, rather than its later ripening or fruition.

In *Jackson* v. *Jackson*, 258 S. W. 231, the Texas Court of Civil Appeals, among other things, said:

The character of the title to property with reference to being separate or community depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right by virtue of which title is finally vested, and when title is so vested it relates back to that time. *Creamer* v. *Briscoe*, 101 Tex. 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869; *Welder* v. *Lambert*, 91 Tex. 510, 44 S. W. 281.

In *Commissioner* v. *King*, 69 Fed. (2d) 639, affirming 26 B. T. A. 1158, King, while married and a resident of Texas, entered into an oral contract in 1920 to prosecute a lawsuit and receive compensation therefor only in the event that his client won. In 1923, while the suit was pending on appeal, King's wife died. The suit was settled favorably to King's client in 1924, and King was allowed a fee of $52,000, which was paid to him in 1925. The Commissioner determined and contended that the entire fee was King's separate income, taxable to him in 1925, because his wife had died prior to the time the litigation was successfully concluded and King's fee was allowed

---

[1] Art. 4627. *Rights of persons married elsewhere.*—The marital rights of persons married in other countries who may remove to this State shall, in regard to property acquired in this State, during the marriage, be regulated by the laws of this State.

Art. 4613. *Husband's separate property.*—All property of the husband, both real and personal, owned or claimed by him before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired shall be his separate property. * * *

Art. 4619. *Community property.*—Section 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. * * *

40 B. T. A.

and paid. King contended that the fee had its incipiency in the contingent fee contract entered into in 1920, and under the principles enunciated in *Jackson* v. *Jackson*, *supra*, was, therefore, community property belonging one-half to himself and one-half to the estate of his deceased wife. The court agreed with his contention and affirmed the Board, which had so held.

In the instant proceeding petitioner concedes that the decision of the court in the *King* case is applicable and that respondent's determination is proper if it can be correctly said that prior to December 30, 1936, petitioner had an enforceable right to compensation for the services he performed for the Wrightsman Oil Co. during that part of the year 1936 in which he and his wife were domiciled in Oklahoma. He contends that, since the bylaws of the Wrightsman Oil Co. provided that the salaries of all officers of the corporation should be fixed by the board of directors, and since the board did not vote him a salary for 1936 until December 30, 1936, therefore, prior to December 30, 1936, there was no contract, agreement, or arrangement for compensation, either expressed or implied; and that under such circumstances the general rule is that he had no enforceable right to compensation prior to the action taken by the board of directors on December 30, 1936, citing as authorities *Lofland* v. *Cahall*, 13 Del. Ch. 384; 118 Atl. 1; 10 Texas Jurisprudence, p. 934; *Austin City Railroad Co.* v. *Swisher*, 1 White and Wilson Texas Unreported Cases, par. 75; *Southwestern Portland Cement Co.* v. *Latta & Happer*, 193 S. W. 1115; Fletcher's Cyclopedia of Corporations (Permanent ed.), vol. 5, pars. 2112 and 2113; and *Pew* v. *First National Bank*, 130 Mass. 391.

It seems clear that petitioner had no express contract with the Wrightsman Oil Co. for the services he was rendering. If he had an enforceable right to compensation, it must be by virtue of an implied contract. We think the evidence is sufficient to show that there was such an implied contract.

With reference to the $50,000 salary credited to petitioner, December 30, 1936, the following questions and answers are found in Wrightsman's testimony at the hearing:

Q. Prior to that time had you or not any agreement or understanding with the Wrightsman Oil Co. as to whether or not you would be paid a salary for the services rendered that company for the year 1936?

A. No, sir, there was no understanding.

Q. Had you and the company in previous years followed the same practice?

A. Yes, sir. That is, of uncertain and indeterminate amounts until the end of the year.

Q. Were there years in which you were paid no salary?

A. That is my best recollection, yes, sir.

We construe this and other testimony in the record to mean that it was understood by petitioner and the corporation that he was to

receive compensation for his services of an uncertain and indeterminate amount, if the affairs of the corporation were conducted successfully, and the amount thereof was left for determination by the board of directors at the end of the year.

The services rendered by petitioner to the Wrightsman Oil Co. were very valuable. As to this there can be no doubt. Petitioner was not only a director and president of the company, a business concern of large affairs, but was its manager and chief executive officer, or, as he expressed it on the witness stand, the "work ox" of the company. He devoted all of his time and attention to managing and supervising the affairs of the company and its 100 percent owned subsidiary, the Home Co., which during the taxable year was merged with the parent company. We think petitioner's services were rendered under such circumstances as to raise a fair presumption that the parties intended and understood that they were to be paid for on one contingency, namely, that the corporation's profits warranted the payment. In such a situation petitioner's compensation for his services was no more contingent than was King's in *Commissioner* v. *King, supra,* where King was to receive a fee if he prosecuted the litigation to a successful conclusion and none if he lost.

In our opinion, the only effect of the resolution of December 30, 1936, was to fix the amount of the salary, just as the order of the court fixed the amount of King's fee in *Commissioner* v. *King, supra,* but was not the inception of the right. The resolution in the instant case did not create the right to the salary. That right accrued as the services were rendered, upon an implied contract that the services would be paid for at what they were reasonably worth, depending upon the earnings of the company. Cf. *Fitzgerald & Mallory Co.* v. *Fitzgerald,* 137 U. S. 98, 111; *National Loan & Investment Co.* v. *Rockland Co.,* 94 Fed. 335, 338; *Montana Tonopah Mining Co.* v. *Dunlap,* 196 Fed. 612, 619; *Vaught* v. *Charleston National Bank,* 62 Fed. (2d) 817. If petitioner had no agreement, either expressed or implied, that he should receive compensation for the services which he had rendered in 1936 prior to the vote of the directors on December 30, 1936, then the directors violated their trust in voting the salary to petitioner for past services performed and rendered themselves liable to any complaining stockholder. See the same authorities just above cited.

We hold, therefore, that the respondent was correct in determining that 357/365 of the $50,000 voted petitioner by the board of directors of the Wrightsman Oil Co. as salary "for the year 1936" represented petitioner's separate income. *Commissioner* v. *King, supra.* Cf. *Asher* v. *Welch, et al.,* United States District Court, Southern District of California, Central Division, decided May 24, 1938.

*Decision will be entered for the respondent.*