ESTATE OF G. PERCY McGLUE, DECEASED, M. EDITH McGLUE, EXECUTRIX, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98446. Promulgated May 21, 1940.

*Lionel B. Farr, C. P. A.*, for the petitioner.
*Elmer L. Corbin, Esq.*, for the respondent.

1188

**OPINION.**

SMITH: The first question for our determination is whether the executors' fees or commissions from the estates of B. F. Saul and James F. Shea are includable in the gross income of the estate of the decedent, G. Percy McGlue, for the year in which his death occurred.

Section 42 of the Revenue Act of 1934 provides:

SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includable in respect of such period or a prior period.

The respondent in his regulations, Regulations 86, article 42–1, has construed this provision of the statute as requiring the net income of a deceased taxpayer for the year in which his death occurs to be computed on the accrual basis. The pertinent part of the article reads as follows:

> * * * If a taxpayer has died there shall also be included in computing net income for the taxable period in which he died amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period, regardless of the fact that the decedent may have kept his books and made his returns on the basis of cash receipts and disbursements. If no determination of compensation is had until the completion of the services, the amount received is ordinarily income for the taxable year of its determination, if the return is rendered on the accrual basis; or, for the taxable year in which received, if the return is rendered on the receipts and disbursements basis. If a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in the later year, assuming that the money or property would have been income in the earlier year if then received. * * *

Referring to the above section of the statute, we said in *Lillian O. Fehrman, Executrix*, 38 B. T. A. 37, after reviewing its legislative history, that:

> It is obvious from the language of the act and the legislative intent as disclosed by the committee reports quoted above that the purpose of Congress was to treat the income of a decedent as though he were on an accrual basis even though he was actually on a cash basis and kept his books on a cash basis, and that the phrase "amounts accrued up to the date of his death" means those amounts which would be properly included in a decedent's income if he were on an accrual basis as distinguished from a cash basis.

See also *Estate of Wilton J. Lambert*, 40 B. T. A. 802.

The respondent's contentions in this proceeding are that the executors' fees to which the decedent was entitled from the estates of B. F. Saul and James F. Shea had accrued at the date of the decedent's death and are therefore includable in decedent's gross income for that year. The petitioner contends, however, that the executors' fees were not accruable income at the date of decedent's death because under the laws of the District of Columbia an executor is not entitled to any fees or commissions until he has filed his final account as executor and the payment of the fees or commissions has been approved by the Probate Court, neither of which events had taken place at the

time of the decedent's death. The parties have cited a number of cases involving questions of the accrual of various items of income. As stated in *Ernest M. Bull, Executor*, 7 B. T. A. 993, "the word 'accrue' has no definite meaning but must be interpreted in accordance with the statutory requirement that the accounts must clearly reflect income."

The factors governing the accrual of items of income and items of deduction are substantially the same; that is, all the events must have occurred which determine the taxpayer's rights or obligations with respect thereto. Thus, as to the accrual of the munitions tax in *United States v. Anderson*, 269 U. S. 422, the Court said:

* * * In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. * * *

In *Jackson v. Smietanka*, 272 Fed. 970, it was held that the additional compensation paid to a receiver at the end of his receivership, pursuant to a preexisting agreement, was taxable to him in the year when allowed by the court having jurisdiction of the receivership. The court there called attention to the provisions of article 32 of Regulations 45 that:

Where no determination of compensation is had until the completion of the services, the amount received is income for the taxable year of its determination, if the return is rendered on the accrual basis; or, for the taxable year in which received, if the return is rendered on a receipts and disbursements basis. * * *

A substantially similar provision is found in article 42–1 of Regulations 86, promulgated pursuant to the Revenue Act of 1934, referred to above.

Relying upon *Jackson v. Smietanka, supra*, the Commissioner ruled in S. M. 1929, C. B. IV–1, p. 125, that executors' fees in the State of Maine, where such fees are allowable at the discretion of the court, were taxable to the executor in the year when allowed by the court although they had been advanced to him in a prior year. However, in G. C. M. 20296, C. B. 1938–2, p. 198, the Commissioner ruled that fees received by an executor in the State of Massachusetts were taxable to him in the year of their receipt, even though they were not allowed by the Probate Court in that year. The distinction was based largely upon the difference in the laws of the jurisdictions.

In *Commissioner v. Cadwalader*, 88 Fed. (2d) 274; certiorari denied, 301 U. S. 706, the United States Circuit Court of Appeals for the Third Circuit held, reversing the Board, that in the State of New Jersey, where executors are not entitled to fees or commissions until the final account is filed and the fees or commissions are allowed by the Orphans' Court, the executrices were taxable on commissions in the year when they were allowed by the Orphans' Court, although such

commissions had been advanced to them in a prior year.

In *Brosnan* v. *Fox*, 52 App. D. C. 143; 284 Fed. 923, the court said:

The commissions were granted under section 365, Code D. C., which provides that an executor or administrator may be allowed "Commissions, which shall be at the discretion of the court, not under one percentum nor exceeding ten percentum on the amount of the inventory or inventories, excluding what is lost or perished." This places a limitation beyond which the court may not go in allowing compensation for the services of an executor or administrator, or executors or administrators, in administering an entire estate. In other words, the limitation operates and commissions are available only when the administration is closed and a final settlement approved. It is then, and only then, that the court has before it complete evidence of the amount and character of services performed, upon which he may intelligently base an allowance. It follows, therefore, that an executor prior to final settlement of the estate, or the termination of his services in connection with the estate, is not entitled to an allowance of commissions.

The services of the decedent as coexecutor of the B. F. Saul estate were terminated by his death on October 31, 1935, and the coexecutor, the American Security & Trust Co., has since carried on the administration of the B. F. Saul estate. The facts do not show to what extent the estate had been administered up to the date of the decedent's death, although it is stipulated that up to that time no final accounting had been filed with the Probate Court and no executors' fees or commissions had been allowed by the Probate Court or claimed by either of the executors.

The Code of the District of Columbia provides, in section 75 of chapter 5, Title 29, that:

If an executor or administrator shall die before the administration of the estate is completed, letters of administration de bonis non or de bonis non cum testamento annexo, as the case may require, shall be granted, in the discretion of the court, * * *

Section 270 of chapter 11, provides that:

The executor or administrator of the deceased executor or administrator shall return, on oath, to the court, on or before the day named as aforesaid, a list of the bonds, notes, accounts, and money aforesaid, and shall be entitled to retain out of the money such commission as the court shall allow, not exceeding ten per centum on the principal inventory, and the personal estate and money turned over by him shall be assets in the hands of the administrator de bonis non, to be accounted for by him as such.

Apparently, under the provisions of section 270 the fees or commissions which the decedent, McGlue, may have earned as executor of the B. F. Saul estate will be paid to his executor or administrator in such amount as the court shall allow "not exceeding ten percentum on the principal inventory."

The amount of the executors' fees which the respondent has determined was accrued at the time of McGlue's death is one-half of the total amount of executors' fees of $141,612.29, which was the amount

claimed as a deduction in the Federal estate tax return filed on behalf of the B. F. Saul estate as "estimated at 3% of the gross estate of $4,720,409.75, as shown on the said return."

Even if we assume that 3 percent of the gross estate is the total amount of the executors' fees that the court eventually will allow (there is no evidence that B. F. Saul entered into any agreement as to the amount of executors' fees with the decedent's coexecutor, the American Security & Trust Co.), it does not follow that the amount will be divided equally between the coexecutors and that one-half of the amount, or $70,806.14, will be allowed to the decedent McGlue's estate. It may appear to the Probate Court that by reason of McGlue's death before completion of the administration of the B. F. Saul estate his services as coexecutor were not commensurate with those of the other executor, which has carried on the administration of the estate since McGlue's death.

While the agreement which McGlue entered into with B. F. Saul to act as coexecutor of his, Saul's, estate for a fee of 1½ percent of the gross estate appears to be valid and while such agreements have been held enforceable by the courts of the District of Columbia (see *Washington Loan & Trust Co.* v. *Convention of Protestant Episcopal Church, etc.*, 54 App. D. C. 14; 293 Fed. 833), it is quite obvious that the agreement contemplated that McGlue should serve as coexecutor until the estate should be completely administered. Then, and not until then, could he have claimed the right to his compensation under the terms of the agreement.

In *Lillian O. Fehrman, Executrix, supra*, the decedent was manager of an F. W. Woolworth store and under his employment contract was entitled to a percentage of the profits each year. The decedent died October 14, 1934. We held that the portion of the profits for 1934, which was not determined until after the close of the year and was not paid to the decedent's estate until some time in January 1935, was not an amount accrued up to the date of decedent's death, within the meaning of section 42 above. Although the facts here differ somewhat, the same principle is involved in each case. At the time of decedent's death the services giving rise to the right to compensation had been performed, but there were other events to take place before the decedent's right to such compensation would become fixed and determined. In the *Fehrman* case it was the taking of the inventory and the determination of the profits of the store; in the instant case, it was the filing of the final executors' account and the allowance of the executors' fees by the Probate Court.

In *Estate of Wilton J. Lambert, supra*, we held that legal fees which the decedent had earned and which were due and payable at the time of his death were accrued income and includable in his gross

estate under section 42 above. There, all of the events had happened at the date of decedent's death which fixed his rights to the fees. We said, referring to section 42 above, that "The effect of that provision, together with its complement in section 43, *infra*, was merely to place decedent on the accrual basis of accounting for the period of the year, 1935, in which he died."

There is nothing to indicate that Congress intended section 42 to have any broader application than merely to require the inclusion in a decedent's gross income of such amounts as, under ordinary accounting practice, would be treated as accrued at the date of his death.

In *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, Chief Justice Hughes, speaking for the Court, said: "When the right to receive an amount becomes fixed, the right accrues."

We do not see how in the instant case it can be said that at the time of McGlue's death he had any fixed and determined right to receive any amount as executors' fees or commissions from the B. F. Saul estate, which in the ordinary sense of the term had "accrued" to him.

We hold therefore that the amount of $70,806.14 representing the estimated executors' fees from the estate of B. F. Saul was not income accrued to the decedent at the time of his death.

Most of what we have said in the foregoing discussion regarding the accrual of the executors' fees from the B. F. Saul estate applies to the other item, the $9,926.75 representing the executors' fees from the estate of James F. Shea, deceased, of which McGlue also served as coexecutor up to the time of his death. In his will James F. Shea named McGlue as coexecutor of his estate, specifying that he should be entitled to receive the usual executors' commissions. At the time of decedent's death, which occurred a little over one year after the death of James F. Shea, no accounting on the estate had been filed by the executors and no executors' fees had been claimed or allowed by the Probate Court. The first accounting on the estate was filed by the surviving coexecutor in February 1936, and in that report the amount of $9,926.75 was claimed as executors' fees on behalf of McGlue's estate. The claim was allowed by the court in that amount on February 20, 1936.

For reasons stated above, we are of the opinion that the amount of $9,926.75 representing the executors' fees from the estate of James F. Shea was not income accrued to McGlue at the time of his death.

The remaining question is whether the dividend on the Bourjois, Inc., stock, which was declared "during the week of October 19, 1935" and was payable on November 15, 1935, to the stockholders of record on November 1, 1935, had accrued at the date of decedent's death, October 31, 1935, and is therefore includable in decedent's gross estate under section 42 above. We think not. Although the facts are

somewhat lacking, we assume that at the time of his death the decedent was the owner of a sufficient number of the shares of stock in question to entitle him to the amount with which he is charged as a dividend accrued at that time. It is to be noted, however, that the dividend, although declared prior to decedent's death and "during the week of October 19, 1935", was not payable to the stockholders of record at the time of the declaration, but to those who might be the stockholders of record on November 1, 1935. If by his will McGlue had specifically bequeathed the shares the legatee would have received and been taxable upon the dividend payable November 15, 1935. Until the latter date there was no certainty who would be the stockholders of record on November 1, 1935, and therefore would be entitled to receive the dividend. See *Sharp* v. *Commissioner*, 91 Fed. (2d) 802. Cf. *William K. Vanderbilt et al., Executors*, 11 B. T. A. 291. This uncertainty of the decedent's right at the time of his death, October 31, 1935, ever to receive the dividend was sufficient, we think, to defeat the accrual of the dividend on that date. In other words, at the time of decedent's death the right to receive the dividend on the Bourjois, Inc., stock had not become fixed. *Spring City Foundry Co.* v. *Commissioner, supra.*

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

TURNER, dissenting: In my opinion, the fees and commissions owing to McGlue for services rendered as coexecutor of the Saul and the Shea estates were accrued at his death and under section 42 of the Revenue Act of 1934 are to be included in net income for the taxable period ended with his death. See reports of the Committee on Ways and Means[1] and the Committee on Finance[2] covering the bill

[1] Sections 42 and 43. Income accrued and accrued deductions of decedents: The courts have held that income accrued by a decedent on the cash basis prior to his death is not income to the estate, and under the present law, unless such income is taxable to the decedent, it escapes income tax altogether. By the same reasoning, expenses accrued prior to death cannot be deducted by the estate. Section 42 has been drawn to require the inclusion in the income of a decedent of all amounts accrued up to the date of his death regardless of the fact that he may have kept his books on a cash basis. Section 43 has also been changed so that expenses accrued prior to the death of the decedent may be deducted.

[2] Sections 42 and 43. Period for which deductions and credits taken. The courts have held that income accrued prior to the death of a decedent on the cash basis is not income to his estate, and under the present law, unless such income is taxable to the decedent, it escapes income tax altogether. By the same reasoning, expenses accrued prior to death cannot be deducted by the estate. Sections 42 and 43 of the House bill were so drawn as to require the inclusion in the income-tax return for the decedent of all items of income and deductions accrued up to the date of death regardless of the fact that the decedent may have kept his books on a cash basis. The change made in section 43 is necessary to effectuate the policy adopted in the House bill in section 42. By reason of the proposed change such items as accrued dividends and interest on partially tax-exempt securities are permitted as a credit in computing the normal tax.

which became the Revenue Act of 1934. Decedent G. Percy McGlue kept his books of account on the cash receipts and disbursements basis and unless the second sentence of section 42 is applicable, the compensation due McGlue for services rendered to the Saul and Shea estates will escape income tax altogether. In a concurrent estate tax proceeding, we have held that the rights of McGlue to such compensation at the time of his death constituted property belonging to him and passing as a part of his estate. Being a part of the decedent's estate, it follows that such compensation will not constitute taxable income to the estate when received. *Jackson B. Kemper, Administrator*, 14 B. T. A. 931, and *Antoinette B. Held, Executrix*, 3 B. T. A. 408. It is the view of the majority that McGlue's compensation as executor of the Saul and Shea estates was not accrued at his death and that the second sentence of section 42 above does not cover that compensation.

In the majority opinion it is said that "*At the time of decedent's death the services giving rise to the right to compensation had been performed* but there were other events to take place before the decedent's right to such compensation should become fixed and determined." (Emphasis supplied.) The other events referred to are described as the "filing of the final executors' account and *the allowance of the executors' fees by the Probate Court*." It is thereafter concluded that there was no accrual of compensation at McGlue's death because at the date of his death he had no "fixed and determined right to receive *any amount* as executors' fees or commissions." (Emphasis supplied.) In *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, the Supreme Court, discussing the reporting of income by the accrual method, said, "It is the right to receive * * * that determines the inclusion in gross income", and, further, that "When the right to receive an amount becomes fixed, the right accrues." It seems to me thus apparent that the conclusion of the majority that there was no accrual of compensation at McGlue's death can not be reconciled with the views of the Supreme Court for two reasons, the first being that the right to compensation had become fixed at McGlue's death, and the second that the events yet "to take place" had to do with the determination of the amount of compensation and not the right to receive compensation.

The conclusion that the right to receive fees or commissions for the services rendered by McGlue had not become fixed at his death and were not therefore accrued is, in my opinion, foreclosed by our holding in the concurrent estate tax proceeding and the pronouncements contained in the majority opinion in the instant case. While holding here that McGlue had no right to receive any amount as com-

pensation for services rendered to the two estates until the Probate Court had acted, we have held in the estate tax proceeding that property rights in and to such compensation, having values of $70,806.14 in the case of the Saul estate and $9,926.75 in the case of the Shea estate, did exist in McGlue at the date of his death. Equally contradictory to the conclusion that there was no right at McGlue's death to receive any amount as compensation is the statement in the majority opinion that "At the time of decedent's death the services giving rise to the right to compensation had been performed." In *C. J. Wrightsman*, 40 B. T. A. 502; affd., 111 Fed. (2d) 277 (C. C. A., 5th Cir., Apr. 10, 1940), we held that an officer of a corporation acquired the right to receive compensation as the services were rendered, even though the resolution of the directors authorizing payment of the compensation and fixing the amount thereof was not adopted until the end of the year.

McGlue qualified and was appointed coexecutor of the Saul estate on April 1, 1931, and of the Shea estate on October 3, 1934, and performed the services required of him up to the date of his death. Under the contract entered into with Saul during his lifetime, McGlue was entitled to a fee of $1\frac{1}{2}$ percent of the appraised value of the Saul estate for serving as coexecutor therefor and, his services as such coexecutor having been concluded at or by his death, not only had his right to compensation become fixed but it may well be argued that it had become fixed for the amount prescribed by the contract. The majority dismisses the contract with the observation that "It is quite obvious that the agreement contemplated that Mc-Glue would serve as coexecutor until the estate should be completely administered", and concludes that under the District of Columbia Code his right to receive compensation did not become fixed until the Probate Court had acted. As I read the code, however, it is of no assistance in reaching the conclusion of the majority. The right to receive compensation for services rendered as an executor of an estate, like the right to receive compensation generally, rests upon or springs from the actual rendition of services, *C. J. Wrightsman*, *supra*, and not on or from any act of the Probate Court. In section 265, chapter 11, Title 29, of the code, it is provided that commissions "shall" be allowed to executors in an amount "not under one percentum nor exceeding ten percentum of the amount of inventory or inventories, excluding what is lost or perished." If the existence of the right to receive compensation is dependent upon the affirmative action of the Probate Court, that court undoubtedly could determine that an executor, even though he had performed all of the services required of him under the law—and we must assume that McGlue did just that up to the date of his death—was entitled to no compensation at all.

It is apparent, however, from section 265 mentioned above that the existence of *the right* of an executor *to receive* compensation for services actually rendered and the liability therefor does' not rest in the discretion of the Probate Court. When the services have been rendered the right to compensation is fixed, and the only function of the court is to determine within the limitations prescribed by statute the amount of compensation due and owing for such services.

Certainly the Board does not wish to be understood as holding that actual determination or knowledge of the amount to be received or paid is a prerequisite to its accrual. If so, it is, in my opinion, overruling many of its own decisions and disregarding the pronouncements of the courts. *J. B. Jemison*, 18 B. T. A. 399; *Bonnie Bros., Inc.*, 15 B. T. A. 1231; *W. J. Burns*, 12 B. T. A. 1209; *Fraser Brick Co.*, 10 B. T. A. 1252; *Beacon Coal Co.*, 9 B. T. A. 280; *Max Kurtz*, 8 B. T. A. 679; *Raleigh Smokeless Fuel Co.*, 6 B. T. A. 381; *Josiah Wedgwood & Sons, Ltd.*, 3 B. T. A. 355; *Producers Fuel Co.*, 1 B. T. A. 202. While there was a known liability in each of the above cases at the end of the taxable year, the amount either had not been or could not be determined or known until later. In certain of the cases involving damages for breach of contract and one case involving insurance losses, negotiations as to the amounts were still in progress and were not concluded until a later year. In each case the liability was accrued in an estimated amount which upon final settlement in the later year was found to be incorrect. It was held in all of the cases, however, that the accruals occurred in the years the liabilities became fixed and not in the years the amounts were determined. The only adjustments were corrections of amounts. The Supreme Court, in *Lucas* v. *American Code Co.*, 280 U. S. 445, distinguished those cases from a case where the liability has been contested and "the amount of damages, if any, was wholly unpredictable", due in that particular case to the fact that liability was substantially dependent upon the course of future events. To illustrate, the claimant was under a duty to mitigate damages. We have no such situation here. Reference to the record in the instant case shows not only that the estates are not contesting their liability to McGlue, but are admitting and claiming liability for certain specified amounts. In *Elsie S. Eckstein*, 41 B. T. A. 746, taxes on real estate had been accrued in an estimated amount based on the value ascribed to the property in computing the tax for the preceding year. There could be no actual determination of the amount of the taxes until determination of the value of the property for ad valorem tax purposes, and that determination by the "Board of Appeals of Cook County" did not occur until two years later. The propriety of the accrual in the year for which the tax was due was not even questioned. In *American Snuff Co.*, 32 B. T. A. 991; affd., 93 Fed.

(2d) 201; certiorari denied, 303 U. S. 662, the question was whether or not certain bonuses to officials and employees accrued in 1928, when they were determined and paid, instead of the years 1912 to 1927, inclusive, when they were earned. It was held that the accruals occurred in the years when the bonuses were earned, even though neither the liabilities nor the amounts thereof were known in those years. The liabilities did in fact exist and could have been known through exercise of proper diligence.

In the majority opinion great significance is attached to the facts that neither estate had been completely administered at McGlue's death, no final accounting had been filed, no executor's fees or commissions had been claimed and none had been allowed by the Probate Court. The claiming and allowing of executor's fees obviously have to do with the formalities of determining the amount of compensation and the payment or collection thereof. The right to compensation being the basis of an allowable claim, the right must necessarily precede the claim and allowance. The right arose from the rendition of services and, as the majority opinion itself states, the services giving rise to the right to compensation had been performed at McGlue's death. Furthermore, in a case such as we have here, where an executor dies before concluding the administration of an estate, the completion of administration of the said estate and the filing of the final accounting not only are not essential or prerequisite to the fixing of the right to compensation, but are not even prerequisite to its collection. Under section 270, *supra*, quoted in the majority opinion from the District of Columbia Code, McGlue's administrator or executor could have required the Probate Court to make an immediate determination of the amounts of compensation owing to McGlue by the Saul and Shea estates and had the further right to retain the amounts so determined out of any assets of the said estates which McGlue might have had on hand at the date of his death. The amount of compensation, though not known or determined at McGlue's death, was then determinable. There were no further events to take place which would add to or take from the right to such compensation, the only things yet to be done being the determination of the amounts within the limitations prescribed by the statute and the actual payment thereof when determined.

The distinction between the instant case and *Lillian O. Fehrman, Executrix*, *supra*, relied upon by the majority, is therefore indicated. In the *Fehrman* case the right of the decedent to receive *any amount* as a bonus for the taxable period ending with his death was subject to the hazards of business operations between the date of his death and the close of the calendar year. In the instant case no such operating hazards existed, and, further, McGlue's administrator or executor could have required immediate determination of

the amount of compensation and the payment thereof. Similarly, *Jackson* v. *Smietanka, supra,* is not in point. In that case the question involved was the year of accrual of additional compensation for services rendered as receiver, and in fixing the regular compensation at the beginning of the receivership the court had made the conclusion of the receivership a prerequisite to any right to additional compensation.

There is a limited group of cases in which it has been held that the existence of the right to receive certain items of income did not result in the accrual of those items for income tax purposes. *Marguerite Hyde Suffolk and Berks,* 40 B. T. A. 1121; *American Fork & Hoe Co.,* 33 B. T. A. 1139; *Oregon Terminals Co.,* 29 B. T. A. 1332; *Emanuel Solomon Ullmann,* 30 B. T. A. 764; *Atlantic Coast Line Railroad Co.,* 31 B. T. A. 730, 749; *Great Northern Railway Co.,* 8 B. T. A. 225, 269. In all of those cases the taxpayers were on the accrual basis and it was held that even though the income was earned in the taxable year the taxpayers were justified in failing to accrue the said items where collection thereof was highly improbable or there was little or no likelihood of collection in the future. There is no showing or claim of any such situation here.

For the reasons set forth, the conclusion that the fees and commissions owing to McGlue for services rendered as coexecutor of the two estates were accrued at his death and taxable under section 42, *supra,* for the period ending with his death, seems to me inescapable.

I therefore note my dissent.

HILL agrees with this dissent.

*Lionel B. Farr, C. P. A.,* for the petitioner.
*Elmer L. Corbin, Esq.,* for the respondent.