LYLE H. OLSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRED S. OLSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

A. F. BAILEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33061, 33199, 33274.   Promulgated November 10, 1931.

*W. W. Spalding, Esq.,* for the petitioners.

*James L. Backstrom, Esq.,* and *P. A. Sebastian, Esq.,* for the respondent.

706

OPINION.

SMITH: In so far as material hereto, section 213 of the Revenue Act of 1921 provides:

That * * * the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid * * * and income derived from any source whatever. The amount of all such items * * * shall be included in the gross income for the taxable year in which received by the taxpayer * * *.

The petitioners' first allegation of error is to the effect that they received additional compensation in the form of money or credits in the amount of $4,000 each in 1922. On brief, the petitioners argue that:

The proper construction of the contract set forth in the resolution of March, 1917, is that it fixes as a measure of the additional compensation for service (the generating cause of the income) a definite amount in dollars and cents, which with the consent of petitioners was to be invested annually in stock of the employer company.

This argument seeks to apply literally the method or form employed and not the substance of the transaction. The intent of the parties was the issuance of certain treasury stock as additional compensation for services rendered by the petitioners; that was the substance of the transaction. The plain language of the minutes and resolution, and the fact of the issuance of stock to the petitioners and other employees as additional compensation for services rendered in other years, support no other interpretation. The fact that those credits were the measure of the company's deduction from gross income as an expense for compensation paid for services rendered is not controlling here. *Robert K. Wehner et al.*, 21 B. T. A. 614. The income of these petitioners must be measured by the fair market value of the stock when received and not the amount of the credits entered upon their or the trustee's accounts upon the corporate books. *Samuel Graydon*, 2 B. T. A. 552; *Charles F. Pearce, Jr.*, 6 B. T. A. 450; *C. A. Tilt*, 14 B. T. A. 437.

The second allegation of error raises the question of the number of shares of stock that each petitioner received in the taxable year 1922. The facts regarding the agreement and issuance of the stock to the trustee for the benefit of the petitioners are not in dispute. The petitioners contend that each received only 40 shares of stock, whereas the respondent insists that each petitioner received 200 shares of stock in 1922. On brief, the petitioners argue that:

Under the resolution, no one had any beneficial interest in the stock after its issuance and delivery to the trustee other than petitioners themselves. So far as the *issued* stock was concerned, the contract embodied in the resolution was no longer an executory one. The issued stock could never revert to the company. Any such reversion would be inconsistent with the clause that the stock was to be "held for and on behalf of these three gentlemen".

We are not unmindful of the fact that petitioners agreed to remain in the service of the company for five years after March, 1917; but a careful study of the resolution—what it says and what it omits to say—leads to the conclusion that it was not intended that any breach of this agreement should operate to divest petitioners of their beneficial interest in the stock previously issued. In the first place there is no provision for such devestiture and forfeitures are not favored in the construction of contracts.

The petitioners further contend that the issuance of these shares each year and their receipt by the trustee of the petitioners on their behalf was equivalent to and constituted receipt by the petitioners; that the trustee was the representative of the petitioners and that the receipt of the stock by him was equivalent to its receipt by them.

Section 213 of the Revenue Act of 1921 requires a return of "income derived from salaries * * * or compensation for personal services," and section 212 (b) provides:

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *

Although the income-tax returns of the petitioners for 1922 were not offered in evidence, no contention is made that petitioners' books of account were kept or their income-tax returns made upon other than a receipts and disbursements basis. In the absence of such evidence it must be held that the additional compensation paid to petitioners was income to them in the year in which they "received" the shares of stock. No evidence has been offered that the petitioners reported in their income-tax returns for the years prior to 1922 any amount in respect of the shares of stock which were turned over to them in 1922. In fact the evidence shows conclusively that each petitioner returned in his income-tax return for 1922 the par

value of the shares of stock, a certificate for which was issued to him in 1922. All that the respondent has done in the determination of the deficiency is simply to increase the value of the stock from $20,000, the amount returned, to $80,000, the amount which the respondent contends to be its fair market value.

In *Eisner* v. *Macomber*, 252 U. S. 189, the Supreme Court defined income as that gain which is "*received* or *drawn by* the recipient [the taxpayer] for his *separate* use, benefit, and disposal." The petitioners contend that they were the beneficial owners of the shares of stock from the time that certificates for the shares of stock were turned over to the trustee. But the incidence of the tax is not upon the value of property beneficially owned by an individual. A receipt by the trustee can not be regarded as a receipt by the petitioners. The shares of stock were received by the petitioners at the time they were turned over to them and made subject to their disposal. A fair reading of the agreement between the petitioners and the American Appraisal Company is that they were not to have the disposal of the stock until the stock was placed in their name. We have heretofore held, in construing similar arrangements, that a taxpayer employee realized income in the year in which he received the certificates of stock in the corporate employer, regardless of the prior delivery of such stock to a bonus custodian or trustee, or its deposit in escrow. *James R. Lister*, 3 B. T. A. 475; *Roscoe H. Aldrich*, 3 B. T. A. 911; *Anthony Schneider*, 3 B. T. A. 920; *Charles F. Pearce, Jr.*, 6 B. T. A. 450; *Charles R. Johnson*, 8 B. T. A. 992; *C. A. Tilt*, 14 B. T. A. 437; *Fred J. Collins*, 16 B. T. A. 1426; *H. L. Carnahan*, 21 B. T. A. 893.

The facts in these proceedings are more nearly those in *Jackson* v. *Smietanka*, 272 Fed. 970. There it was held that where a receiver, by order of the court, was paid a sum monthly for his services, with liberty to apply for additional compensation at the end of receivership, such final allowance, made at the end of five years, was income of the year received and that it was not distributable for income-tax purposes through preceding years, even though an order had been entered by the District Court that the additional compensation was earned and had accrued in equal monthly installments throughout the receivership. The respondent did not err in holding each of the petitioners liable to income tax in respect of the fair market value of the 200 shares of stock issued to him in 1922.

The remaining issue is the determination of the fair market value of the 200 shares of stock received by each petitioner within the taxable year. In the statement attached to the deficiency notice the respondent stated that:

* * * inasmuch as the only sales at this time of stock of the American Appraisal Company to willing purchasers by willing sellers were for $400.00 a share, also, in view of the large dividends paid by the corporation during the

years 1918 to 1922 inclusive as well as the computation of the value of the stock in accordance with A. R. M. 34, Cumulative Bulletin Number 2, Page 31, indicates a value in excess of $400.00 per share, this office holds the value of $400.00 per share as placed on the stock to be fair and equitable.

The respondent's valuation is based upon a sale of 800 shares of this stock by the widow of a deceased officer of the Company to the petitioners and another officer of the Company. The sale was made in 1921 at a price to be paid not in cash, but in installments largely out of the dividends upon the stock sold.

The petitioners included the 200 shares of stock received in 1922 in their income-tax returns for 1922 at its par value of $100 per share, but now contend that the stock either had no readily realizable market value in 1922 or that such value did not exceed the par value. Certain witnesses testified that the stock had no market value, such opinions being predicated largely upon the fact that the stock was not listed or dealt in on any exchange and that the stock was closely held.

In *George M. Wright*, 19 B. T. A. 541, 548, affd., 50 Fed. (2d) 727; certiorari denied by United States Supreme Court, October 26, 1931, we said:

\* \* \* The absence of active trading in a stock does not necessarily show lack of fair market value, and under the circumstances other evidence, including evidence as to the intrinsic value of the assets back of the stock, should be considered in determining whether the stock had a fair market value. *William Ziegler, Jr.*, 1 B. T. A. 186; *Napoleon B. Burge*, 4 B. T. A. 732; *W. C. Arthurs*, 3 B. T. A. 374; *Wilson E. Schmick*, 3 B. T. A. 1141; *William Schoenheit et al., Executors*, 14 B. T. A. 33. \* \* \*

We are not convinced that the stock had no fair market value merely because there were no sales of the stock in 1922. *James Couzens*, 11 B. T. A. 1040, 1163, 1164. There was a sale of the stock in 1921 at a price of $400 per share and the earnings of the company in 1920 were in excess of $200 per share. The company paid cash dividends of at least 500 per cent over the four-year period from 1918 to 1921, inclusive, and had profits in excess of the dividends paid. It paid a 100 per cent cash dividend in 1921. The evidence supports the contention of the respondent that the market value of the stock at the time received by the petitioners in 1922 was at least $400 per share.

Since under the statute taxpayers receiving compensation for services in whatever form paid are required to include the same in their income-tax returns, we are of the opinion that each of the petitioners is liable to income tax in 1922 upon the 200 shares received in that year at the rate of $400 per share. Cf. *John B. Nordholt*, 4 B. T. A. 509; *Fred J. Collins*, 16 B. T. A. 1426; *Benedict Crowell et al.*, 21 B. T. A. 849.

Reviewed by the Board.

*Judgments will be entered under Rule 50.*