OMAHA NATIONAL BANK, JOHN CLAPPER AND KATIE FARRINGTON, EXECUTORS OF THE ESTATE OF F. J. FARRINGTON, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53237.  Promulgated January 18, 1934.

*Karl Reimer, Esq.*, for the petitioners.
*R. W. Wilson, Esq.*, for the respondent.

820

OPINION.

ARUNDELL: The petitioners contend that the delivery of the stock to Farrington in 1928 was in fulfillment of a right of purchase that he acquired in 1918, and that since that right was property no income resulted from its exercise. The appreciation in the value of the right, it is argued, is not income until realized by sale or exchange of the stock acquired by virtue of the right. The respondent, on the other hand, points to the several contracts and argues that they were essentially contracts of employment under which the stock was received by Farrington as compensation for services rendered.

We think there can be no doubt that the plan under which Farrington acquired the stock in its inception was one based on his employment by the company. The transaction did not start with

the contract of April 8, 1918. The contract refers to the one of 1911, as modified in 1914, and cancels the earlier agreements only in respect of "the purchase" of the stock. It left the prior agreements in effect in so far as they pertained to other matters. The 1911 contract, after stating the cash salary to be paid provided that "in further consideration of the services to be rendered" by Farrington, the company "agrees to sell" and Farrington "agrees to buy" 500 shares of stock of the company. When in 1914 the period of employment was extended for a year, and a new note was executed by Farrington, the continuing existence of the original contract was recognized by a provision in the new note that:

This note is given in modification of a personal service and stock purchase contract heretofore made with the undersigned, and is subject to the provisions of the original contract—except as so modified.

In the 1918 contract, as pointed out above, only the provisions of the earlier contracts relating to the so-called purchase of stock were modified. Thus at all times from 1911 the parties to the agreements recognized that the stock was to be issued "in further consideration of services to be rendered." The only difference in substance between the 1911 and 1914 contracts and that of 1918 was that under the earlier ones it was contemplated that Farrington would pay $50 per share, while under the last one it would not be necessary for him to pay anything if he waited until dividends and arbitrary credits to his account were sufficient to make up the $50. The consideration for the stock was still the same, namely, services of Farrington plus $50 per share. In order for him to receive the stock without himself paying the $50 per share it was necessary, under the 1918 contract, for him to remain in the service of the company. An option existed under the contract whereby, in the event of death or discontinuance of services on account of age or disability, arbitrary credits and dividends could be allowed to accumulate until the stock was paid for. There is no provision, however, in the contract under which credits would accumulate and the stock be issued without payment by Farrington if he voluntarily left the employ of the company. Hence, if he lived and was able to continue in the employ of the company he had a choice of two methods of acquiring the stock, either by paying cash of $50 per share or remaining in the service of the company until the credits to his account were sufficient to permit him to withdraw the stock without payment. He chose the latter method and during the succeeding years of his employment entered into several contracts with the company under which he agreed to continue in its service until November 1, 1929. In view of the original intent of the parties that Farrington was to be permitted to acquire the stock at the specified figure in consideration of his services, and that when later it was decided to issue it to him without cost but only on con-

dition that his employment continued, the conclusion is inescapable that the stock was received as compensation for services. Petitioners do not challenge the long established holding that stock received as compensation is income. See *James R. Lister*, 3 B.T.A. 475; *Charles R. Johnson*, 8 B.T.A. 992; *C. A. Tilt*, 14 B.T.A. 437. It is immaterial that the stock is received for services rendered in the past. See *Lyle H. Olson*, 24 B.T.A. 702; *Old Colony Trust Co. et al., Administrators*, 22 B.T.A. 1062; affd., 59 Fed. (2d) 168.

Granting that Farrington acquired a valuable right in 1918 under the contract of that year, it does not follow that that represented income then realized. Cf. *Burnet* v. *Logan*, 283 U.S. 404. The promise in this case—to deliver stock—was not unconditional. Something remained to be done before the employee could draw down the stock. He had either to pay $50 per share or remain in the service of the company until credits to that amount had accumulated. Under such circumstances it seems clear that to one on the cash basis no income is realized until payment is actually received, which in this case was in 1928. The case of *Durkee* v. *Welch*, 49 Fed. (2d) 339, cited by petitioners is not in point. There it was necessary for the recipients of the stock to pay for it by means of permitting deductions from their salary checks.

We conclude that the stock received in 1928 was income to the extent of its value at the time of receipt. Cf. *Albert Russel Erskine*, 26 B.T.A. 147.

Reviewed by the Board.

*Decision will be entered for the respondent.*