Leonard Perlmutter and Alice Perlmutter et al. [1] v. Commissioner. Perlmutter v. Commissioner
Docket Nos. 3982-65 - 3984-65.
United States Tax Court
T.C. Memo 1967-19; 1967 Tax Ct. Memo LEXIS 244; 26 T.C.M. (CCH) 117; T.C.M. (RIA) 67019; January 31, 1967
*244 Gene W. Reardon, for the petitioners. Arthur B. Bleecher, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and addition to tax for the calendar year 1958 in the following amounts: Addition to tax
under
Docket
Sec. 6653(a)
number
Petitioners
Deficiency
I.R.C. 1954
3982-65
Leonard and Alice Perlmutter
$10,494.98
$524.75
3983-65
Phil H. and Belle Perlmutter
10,563.92
528.20
3984-65
Jack and Joanna Perlmutter
10,460.23
523.02
By amendments to answers in Docket Numbers 3982-65 and 3984-65, respondent claimed increases in deficiencies of $5,044.32 and $5,040.33 and increases in the addition to tax of $252.22 and $253.01, respectively, based upon an alternative contention. Certain of the issues raised by the pleadings have been conceded by respondent, leaving for our decision the following: (1) Whether assessment of deficiencies against each of petitioners is barred by the statute of limitations. (2) If assessment of deficiencies is not barred by the statute of limitations, whether each of petitioners received capital gain as a result of the transfer of assets and liabilities of a partnership to a corporation, and if *245 so, the amount of such gain received. (3) Whether the addition to tax under section 6653(a), I.R.C. 1954, is proper. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners in each of the docket numbers here involved are husbands and wives, residents of the State of Colorado, who filed joint Federal income tax returns for the calendar year 1958 with the district director of internal revenue, Denver, Colorado. Each of these returns was filed on or before April 15, 1959. Alice, Belle, and Joanna Perlmutter are petitioners in these cases only because each filed a joint return with her husband for the year 1958. Leonard, Phil H., and Jack Perlmutter (hereinafter referred to by their first names) in the year 1958 were partners in an enterprise known as Perlmutter and Sons located in Denver, Colorado. Jack and Leonard are sons of Phil. Perlmutter and Sons manufactured sewer pipe and did building construction work. The partnership filed a United States partnership return of income, Form 1065, designated as "1958" with the district director of internal revenue, Denver, Colorado. On this partnership return of income, gross receipts or gross sales less *246 returns, allowances, etc., were reported as $162,679.37 and net profit was reported as $34,255.84. A long-term capital gain of $15,275.20 was reported resulting from the sale of building and land acquired in 1948 and sold in 1958 for a gross sales price of $24,024.25. On page 4 of the partnership return under Schedule L. - Balance Sheets, no figures are given and the following statement appears: "Company was absorbed by Prestressed Concrete of Colo., Inc. 6/30/58." On or about June 30, 1958, the assets and liabilities of the partnership Perlmutter and Sons (hereinafter referred to as Perlmutter) were transferred to Prestressed Concrete of Colorado, Inc. (hereinafter referred to as Prestressed Concrete), a corporation in which the partners of Perlmutter already owned stock. Prestressed Concrete was organized in 1952. In 1958 at the time the partnership assets and liabilities of Perlmutter were transferred to Prestressed Concrete in exchange for its capital stock, Phil was chairman of the board of directors, Jack was president, and Leonard was vice president of the corporation. The earned surplus of Prestressed Concrete on June 30, 1958, the close of the corporation's fiscal year was *247 $22,600.55. From 1952 to June 30, 1958, Prestressed Concrete never accrued or paid salaries to Leonard, Jack, or Phil, its three principal officers. The corporation has never paid a dividend to its stockholders. After June 30, 1958, the corporation commenced payment of salaries to Leonard, Jack, and Phil. Prestressed Concrete caused the following journal entry to be made on its books on June 30, 1958, to reflect the receipt of the assets and liabilities of Perlmutter: Date
Debits
Credits
1958
June 30 Acc Rec
$89,766.74
Mdse Inventory
15,328.80
Notes Rec
6,445.87
Auto Equipment
11,210.54
Office Equipment
$ 1,352.27
Machinery & Equipment
4,233.75
Goodwill
81,604.33
Acct Rec - Prestressed Concrete
63,506.49
Eric Bristow
$ 5,000.00
Accounts Payable
25,773.64
Burkhardt Loan
193,163.74
Auto Loans
2,702.84
Sales Tax
123.05
State Withholding Tax
435.04
Social Security
1,336.70
Withholding Tax
3,213.78
Capital Stock
41,700.00
To record transfer of P & Sons assets to
Prestressed Concrete, Inc.
The stock record book of Prestressed Concrete shows the following with respect to outstanding stock of the corporation from June 26, 1952, through August 4, 1958: Number
Total
Certificate
of
shares
Stockholder
Date
number
shares
outstanding
Geo. C. Hanson
6-26-52
1
2,250
2,250
Geo. C. Hanson
6-26-52
2
2,250
4,500
Phil H. Perlmutter
6-26-52
3
5,000
9,500
Phil H. Perlmutter
6-26-52
4
2,500
12,000
Belle Perlmutter
6-26-52
5
5,000
17,000
Jack H. Perlmutter
6-26-52
6
4,625
21,625
Jack H. Perlmutter
6-26-52
7
2,500
24,125
Leonard Perlmutter
6-26-52
8
4,625
28,750
Leonard Perlmutter
6-26-52
9
2,500
31,250
Geo. C. Hanson
6-26-52
10
2,500
33,750
Phil H. Perlmutter
9- 1-52
11
4,000
37,750
Belle Perlmutter
9- 1-52
12
2,000
39,750
Jack H. Perlmutter
9- 1-52
13
1,500
41,250
Leonard Perlmutter
9- 1-52
14
1,500
42,750
Roslyn Altenberg
9- 1-52
15
4,625
47,375
Roslyn Altenberg
9- 1-52
16
2,000
49,375
Ann Reinstein
9- 1-52
17
4,625
54,000
Ann Reinstein
9- 1-52
18
2,000
56,000
Belle Perlmutter
10-15-52
19
2,000
58,000
Belle Perlmutter
10-15-52
20
1,500
59,500
Belle Perlmutter
10-15-52
21
1,000
60,500
Roslyn Altenberg
10-15-52
22
2,000
62,500
Ann Reinstein
10-15-52
23
2,000
64,500
M. and Jos. Berenbaum
10-15-52
24
1,055
65,555
Wm. and Ann Loper
11-11-52
25
5,000
70,555
Wm. and Ann Loper
11-11-52
26
5,000
75,555
Irvin S. Rasmusson
11-24-52
27
1,500
77,055
C. D. Rasmusson
11-24-52
28
1,500
78,555
C. D. Rasmusson
12- 1-52
29
6,000
84,555
Irvin S. Rasmusson
12- 1-52
30
6,000
90,555
Gladys V. Hanson [1]
12-23-54
31
2,500
90,555
Gladys V. Hanson [2]
12-14-55
32
2,250
90,555
Gladys V. Hanson [3]
12-26-56
33
2,250
90,555
S. D. & E. M. Talcott
6-25-57
34
500
91,055
S. D. & E. M. Talcott
6-25-57
35
500
91,555
Phil Talcott
6-25-57
36
1,000
92,555
Jack H. Perlmutter [4]
6-25-57
37
6,500
92,555
Leonard M. Perlmutter [5]
6-25-57
38
6,500
92,555
Phil H. Perlmutter [6]
6-25-57
39
1,000
92,555
Ted Weinstein
8- 4-58
40
10,000
102,555
Ted Weinstein
8- 4-58
41
5,000
107,555
Ted Weinstein
8- 4-58
42
5,000
112,555
Jack H. Perlmutter
8- 4-58
43
10,333
122,888
Leonard M. Perlmutter
8- 4-58
44
10,333
133,221
Jack H. Perlmutter
8- 4-58
45
3,566
136,787
Leonard M. Perlmutter
8- 4-58
46
3,566
140,353
*248 No other entries appear on this stock record book until March 15, 1966. In February of 1958 Ted Weinstein advanced $50,000 in cash to Prestressed Concrete, for which he received a demand note. Weinstein had known Phil, Jack, and Leonard for a number of years through business associations. He had disposed of a business interest shortly before January 30, 1958, and had received some cash as a result of the disposition which he was desirous of investing in a manner to enable him to obtain employment. Weinstein believed that an association with the Perlmutters might be advantageous to him. By making a loan of $50,000 to Prestressed Concrete, Weinstein believed that he would be able to obtain employment by that corporation and eventually, if he decided it desirable, probably become "an owner." Weinstein commenced employment with Prestressed Concrete in February 1958 at the time he made the advance of the $50,000 to the corporation and has continued to be an employee *249 of Prestressed Concrete since that date. Weinstein was paid no interest on his note by Prestressed Concrete and at times after making the loan he had doubts as to whether he would be repaid. At some time between February of 1958 and August 4, 1958, Weinstein discussed with the Perlmutters the possibility of stock in Prestressed Concrete being issued to him for his note. He considered the stock to be a speculative investment but because of his belief in the ability of the Perlmutters and his desire to retain his employment with Prestressed Concrete and his business associations with the Perlmutters, was willing to speculate on the success of the enterprise. On August 4, 1958, Prestressed Concrete issued 20,000 shares of its capital stock to Weinstein and he returned the $50,000 note to the corporation. As a result of the transfer of the assets of Perlmutter on June 30, 1958, to Prestressed Concrete a total of 27,798 shares of stock (13,899 each) were issued to Jack and Leonard. No shares were issued to Phil. Phil, Jack, and Leonard remained personally liable on some of the partnership debts which were transferred to the corporation and a portion of the partnership debt of Perlmutter *250 was secured by a mortgage on a building owned by PJL Company, a partnership composed of Phil, Jack, and Leonard. However, all partnership liabilities assumed by Prestressed Concrete were paid in years subsequent to 1958 by the corporation and none was paid by the individual partners. PJL Company owned a building at 5801 Pecos, Denver, Colorado, a part of which was used in 1958 by Perlmutter and a part rented to Prestressed Concrete. During 1958 the gross receipts of PJL Company from rental of the building were approximately $6,000 since the Perlmutter partnership did not pay rent for the portion of the building used by it prior to June 30, 1958. Phil on his income tax return for 1958 reported salary from Prestressed Concrete of $7,730, net short-term gain from partnerships and fiduciaries of $3,433.80, net long-term gain from partnerships and fiduciaries of $5,091.73, partnership income from Perlmutter of $11,418.61, partnership income from PJL Company of $569.19, and partnership income from Perlmutter and Rudd of $3,359.49. He reported interest income of $504.55. Leonard on his income tax return for 1958 reported salary from Prestressed Concrete of $10,130, net short-term gain from *251 partnerships and fiduciaries of $3,433.79, net long-term gain from partnerships and fiduciaries of $5,091.74, partnership income from PJL Company of $569.17, and partnership income from Perlmutter of $11,418.62. He reported interest income of $22.37. Jack on his income tax return for 1958 reported salary from Prestressed Concrete of $10,130, net short-term gain from partnerships and fiduciaries of $3,433.80, net long-term gain from partnerships and fiduciaries of $5,091.73, partnership income from Perlmutter of $11,418.61, and partnership income from PJL Company of $569.17. Perlmutter had no written partnership agreement. The partnership did no business after June 30, 1958, although it did continue to have a telephone number listed in the Denver telephone directory from that date to the date of the trial of this case. The partnership profits for the first six months of 1958 were divided equally among the three partners. For prior years there had been occasions when the profits of the partnership were not divided on an equal basis among the three partners. The journal entry made on June 30, 1958, reflecting the receipt of partnership assets and liabilities by the corporation was made *252 by the accountant for the corporation from figures which were obtained from the partnership or the corporation with the exception of the figure entitled, "goodwill." The figure for goodwill was entered by the accountant on his own initiative as a balancing item. Subsequent to the transfer of the assets and liabilities of Perlmutter to Prestressed Concrete, the earnings of that corporation increased. On April 8, 1965, the respondent issued a notice of deficiency to each of the petitioners in which he determined that Leonard had capital gain of $14,021.04, and Phil and Jack each had capital gain of $14,021.05, and that Leonard had dividend income in the amount of $7,433.51, and Phil and Jack each had dividend income in the amount of $7,433.52, with the explanation that Examination of the books and records of the partnership of Perlmutter and Sons discloses that your share of the distributable income for the year 1958 is $12,309.44 * from ordinary income $33,133.83 from capital gain and $7,533.52 ** from qualifying dividends. Petitioners in their petitions alleged that the assessment of any deficiencies was barred by the 3-year statute *253 of limitations, and respondent in his answer in each case admitted that the return in each case was filed on or before April 15, 1959, but alleged as a defense to the assignment of error of the bar by the statute of limitations that petitioners omitted from the gross income reported on their returns an amount properly includable therein which was in excess of 25 percent of the amount of the gross income stated in the return and as a consequence the assessment of the deficiencies in income tax and addition to tax was not barred under the provisions of section 6501(e)(1), I.R.C. 1954. Ultimate Facts Respondent has failed to establish that any one of petitioners omitted from his gross income an amount properly includable therein in excess of 25 percent of the gross income reported in his income tax return for the year 1958 and therefore the deficiencies as determined by respondent are barred by the statute of limitations. Opinion The parties are in agreement that the 3-year statute of limitations provided by section 6501, I.R.C. 1954, had expired in the case of each petitioner before respondent mailed to that petitioner the statutory notice of deficiency on April 8, 1965. Petitioners *254 have pleaded the bar of the 3-year statute of limitations and respondent has alleged in defense that the 6-year statute of limitations provided for by section 6501(e)(1)(A)[2] *255 is applicable. In order for the 6-year statute to apply, it is incumbent on respondent to prove that the petitioners have omitted from gross income amounts properly includable therein in excess of 25 percent of the gross income reported on their returns. C. A. Reis, 1 T.C. 9 (1942), affd. 142 F. 2d 900 (C.A. 6, 1944). In order to sustain his burden of proving such an omission of income, it is incumbent on respondent to show the amount of gross income stated in each petitioner's return and the amount of gross income properly includable therein which has been omitted. H. Leslie Leas, 23 T.C. 1058, 1060 (1955). Petitioners contend that respondent has failed to sustain his burden in either respect. Petitioners take the position that respondent has failed to prove the amount of gross income reported by each of petitioners from PJL Company, the amount of gross income reported by Phil from the partnership of Perlmutter and Rudd, and the gross income reported by each of petitioners as short-term capital gain from partnerships or fiduciaries. Respondent contends that the gross income of PJL Company has been shown to be approximately $6,000 and therefore this is the amount to be included *256 as gross income reported by each of petitioners. Respondent further contends that the long-term and short-term capital gain reported by each petitioner totaled $8,525.53 and the gain and not the sales price of the capital asset is the proper amount includable in gross income for the purposes of making the computation of the 25 percent omission. It is respondent's position that the partnership income of $3,359.49 reported by Phil from Perlmutter and Rudd is the proper amount to be included in Phil's gross income from that partnership for the purpose of the computation of the 25 percent omission. Respondent therefore contends that he has established reported gross income for Leonard of $74,906.38, for Phil of $76,348.05, and for Jack of $74,884.01, and that 25 percent of the reported gross income of each of these petitioners is $18,726.60, $19,087.01, and $18,721, respectively. Respondent does not explain the inconsistency which exists in using one-third of the gross sales of Perlmutter as the reported gross income of each petitioner from that partnership and one-third of what he contends to be the gross receipts of PJL Company as the gross income of each petitioner from that partnership, *257 but in the case of Phil using the reported taxable income of $3,359.49 from Perlmutter and Rudd as the gross income of Phil from that partnership. This Court has recognized respondent's own rulings that a partnership return is to be considered as a part of the individual return in arriving at the total gross income stated in the individual return. Jack Rose, 24 T.C. 755, 768-769 (1955). See also Genevieve B. Walker, 46 T.C. 630, 637-638 (1966). Under the provisions of section 6501(e)(1)(A) as distinguished from the comparable provision of the Internal Revenue Code of 1939 (section 275(c)), the term "gross income" in the case of a trade or business means the amounts received or accrued from the sales of goods or services undiminished by the cost of such sales or services. Respondent introduced no evidence with respect to the nature of the business of Perlmutter and Rudd or the gross sales or gross receipts of that partnership. Respondent made no showing that a partnership return of income was not filed by Pelmutter and Rudd for the year 1958. We therefore agree with petitioners that respondent has failed to show the amount of gross income reported by Phil and therefore respondent *258 has failed to sustain his burden of showing a 25 percent omission from gross income by Phil of amounts properly includable by him in gross income. Whether respondent has sustained his burden of showing the reported gross income of Leonard and Jack depends primarily on whether respondent is correct in using the total amount of long-term and short-term capital gain reported or whether petitioners are correct in their contention that one-third of the sales prices of capital assets is properly includable in gross income of each petitioner for the purpose of determining whether there has been an omission of gross income in excess of 25 percent of the gross income reported under section 6501(e)(1)(A). Respondent interprets the provision of section 6501(e)(1)(A) that in the case of a trade or business the term "gross income" means the total of the amounts received or accrued from the sale of "goods" to apply only to sales in the ordinary course of the business, while petitioners contend that it applies even to a sale of a capital asset by a business enterprise. We consider it unnecessary to resolve that issue between the parties since in our opinion respondent has failed to show an omission *259 from gross income by Jack and Leonard in excess of 25 percent of the income reported, even using respondent's computation of the reported gross income by Jack and Leonard. Respondent takes the position that the transfer of the Perlmutter partnership assets and liabilities to Prestressed Concrete was a reorganization on which gain is recognizable since the partners did not have control of the corporation after the transfer within the meaning of section 368(c) as required by section 351 for the transfer to be one on which the gain is not recognized. Petitioners do not argue that the transfer is one on which gain is not recognized but contend that respondent has failed to show that any gross income or gain resulted from the transfer. Petitioners do not precisely state what they consider might constitute gross income from the transfer of the assets of Perlmutter to Prestressed Concrete as they do in their argument that one of the reasons respondent has not shown the amount of gross income reported by each petitioner is that he has failed to show the sales price, which they contend is the gross income, of the asset sold resulting in a short-term capital gain. As we pointed out, respondent *260 has not shown the sales price of the capital asset from which each petitioner reported short-term capital gain from partnerships or fiduciaries. If we had accepted petitioners' contention that the sales price of such asset was gross income for the purposes of determining whether there existed a 25 percent omission under section 6501(e)(1)(A), respondent would have failed to carry his burden of proof before we reached any issue with respect to the gross income properly includable by each of petitioners for the year 1958 from the transfer of the assets and liabilities of Perlmutter to Prestressed Concrete. Respondent, however, consistent with his position with respect to how the gain from sales of capital assets should be included in the determination of gross income reported by each of the petitioners, takes the position that it is the gain by the Perlmutter partnership on the transfer to Prestressed Concrete which constitutes the omitted gross income. Therefore, we will consider whether respondent has shown such gain to be in excess of 25 percent of the gross income reported by each petitioner as such reported gross income is computed by respondent. It is respondent's position that *261 the partnership realized a gain of $109,398.67 [3] on the transfer of its assets and liabilities to Prestressed Concrete, composed of $39,903.67 which respondent says is the excess of the partnership liabilities assumed by Prestressed Concrete over the basis of the partnership assets transferred to the corporation plus $69,495 represented by 27,798 shares of Prestressed Concrete stock at $2.50 a share, which stock was issued one-half to Jack and one-half to Leonard. Petitioners contend that respondent has not shown that Prestressed Concrete assumed indebtedness of Perlmutter in an amount of $39,903.67 in excess of the basis of the assets transferred to the partnership. In this respect petitioners do not question the basis of any of the assets transferred except the item of goodwill which respondent likewise does not consider as an asset for the purpose of the computation of the excess of indebtedness assumed over the basis of the assets transferred but contend that from a legal *262 standpoint the corporation did not assume the partnership liabilities since the partners remained personally liable on the indebtednesses transferred to the corporation and the building owned by PJL Company remained as security for a portion of those indebtednesses. It is petitioners' contention that no partnership indebtedness was assumed by Prestressed Concrete until such indebtedness was paid by the corporation which payments were made in years subsequent to 1958. Whether, under the facts here shown, the amount of the Perlmutter indebtedness assumed by Prestressed Concrete includes indebtedness which remained secured by property belonging to PJL Company, we need not decide. Accepting respondent's computation of the income to Perlmutter from the assumption of its indebtedness by Prestressed Concrete, the result is $13,301.22 (one-third of $39,903.67) of income from this source to each petitioner. This amount is less than 25 percent of the reported gross income as computed by respondent for Jack and Leonard by $5,419.78 and $5,424.38, respectively. In our opinion respondent has not shown a fair market value of the stock received by Jack and Leonard sufficient to show an omission of *263 gross income by either in excess of 25 percent of the gross income reported, even if we consider that each petitioner derived the amount of gross income from the assumption by the corporation of the partnership's indebtedness which respondent contends was derived. In order to prove that the amount of gross income omitted by each petitioner from his return was in excess of 25 percent of his reported gross income, the burden is on respondent to establish a value of the stock received by each petitioner in an amount sufficient when added to the income received by such petitioner from assumption of partnership indebtedness to total an amount in excess of 25 percent of reported gross income. See Lois Seltzer, 21 T.C. 398 (1953), and David Courtney, 28 T.C. 658, 668 (1957). Respondent cannot rely on his deficiency notices to sustain his burden of proof of the value of the stock. C. A. Reis, supra. The record is lacking in evidence of the type or nature of the operations of Prestressed Concrete prior to the transfer to it of the partnership assets. The corporation was renting part of the building at 5801 Pecos from PJL Company. Its accumulated earnings over its approximately 6 years of *264 operations were approximately $22,600. During this period it had paid no salaries to its chief officers. The officers' salaries paid to the three major officers for the one-half of the year 1958 after the transfer to the corporation of the partnership assets were in excess of the total accumulated earnings of the corporation during its prior existence. The corporation had never paid any dividends. There is no showing of any goodwill attaching to the partnership business transferred to Prestressed Concrete as distinguished from the personal reputations of the three individual partners who were the chief officers of the corporation. The liabilities transferred to the corporation by the partnership as shown on the corporate books were in excess of the assets transferred, other than goodwill, by over $39,000. One of petitioners testified that he considered the stock to have only speculative value. Ted Weinstein also in effect so testified. Weinstein had lent the corporation $50,000 in February 1958 and at some subsequent date prior to August 4, 1958, agreed to accept 20,000 shares of stock and return the $50,000 note which he had received when he made the loan to the corporation. It is *265 this transaction on which respondent relies primarily in arguing that the Prestressed Concrete stock had a fair market value of $2.50 a share. Respondent ignores the fact that Weinstein did not pay $50,000 for 20,000 shares of stock but surrendered a note, the fair market value of which is not shown and the collectibility of which was doubtful, for the stock. Furthermore, Weinstein entered into the entire transaction primarily because he wanted to obtain employment by Prestressed Concrete and become a business associate of the Perlmutters. Because of the circumstances surrounding the issuance to Weinstein of the 20,000 shares of Prestressed Concrete stock, the transaction is worthy of little weight in determining the fair market value of the stock. See Four Twelve West Sixth Co., 7 T.C. 26, 33-34 (1946). Respondent argues that "in the case of an isolated sale of stock that fair market value may be measured by such isolated sale, along with other evidence of value," citing Lyle H. Olson, 24 B.T.A. 702 (1931) affd. 67 F. 2d 726 (C.A. 7, 1933), certiorari denied 292 U.S. 637 (1934). In the instant case the circumstances of the "isolated sale" do not reveal the amount paid for the *266 stock as distinguished from other considerations of the transaction. The other evidence of record all tends to show a much lesser value of the Prestressed Concrete stock than $2.50 a share. Respondent in his brief states that, "The usual method of appraising stock issued for property, lacking evidence of market value of the stock, is to say the stock is equal in value to the property," citing C. G. Meaker Co., Inc., 16 T.C. 1348 (1951) and Four Twelve West Sixth Co., supra. Respondent has not shown the fair market value of the assets transferred by the Perlmutter partnership to Prestressed Concrete but from the nature of the items transferred, it is doubtful whether the fair market value would equal the book value at which the transfer was recorded and quite unlikely that the fair market value of such assets would exceed book value. On the basis of book value, since under respondent's computation the liabilities assumed exceeded the assets transferred by over $39,000, the stock received for the assets would have no value as measured by the value of the assets transferred. Respondent argues that "goodwill" of the partnership was transferred to the corporation which was a valuable *267 asset. The evidence does not support respondent's position. The corporate name was used, not the partnership name. The partnership name remained listed in the telephone book but such listing is not shown to have been of any benefit to the corporation. References are made in the testimony to the personal reputations of the Perlmutters but there is no evidence of any goodwill attaching to the partnership as a going business. We conclude from the evidence as a whole that the fair market value of the Prestressed Concrete stock received by each of petitioners Leonard and Jack in exchange for assets and liabilities of the Perlmutter partnership was not an amount which, when added to his share of income from the assumption by the corporation of partnership indebtedness, would cause the gain on the transfer of the assets and liabilities of Perlmutter to Prestressed Concrete to be an amount in excess of 25 percent of the gross income reported by each Jack and Leonard on his income tax return. In view of our holding that respondent has failed to carry his burden of showing an omission from gross income by any one of petitioners of an amount properly includable therein in excess of 25 percent *268 of the gross income reported by such petitioner, it is unnecessary to consider petitioners' further contention that the notation on the partnership return "Company was absorbed by Prestressed Concrete of Colo., Inc. 6/30/58" was sufficient to apprise respondent of the transaction between Prestressed Concrete and the partnership within the meaning of section 6501(e)(1)(A)(ii).
Since under our determination there will be no deficiencies in petitioners' income tax, the question of whether the respondent's addition to tax under section 6653(a) is proper becomes moot. Decisions will be entered for petitioners. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Phil H. Perlmutter and Belle Perlmutter, Docket No. 3983-65, and Jack Perlmutter and Joanna Perlmutter, Docket No. 3984-65.↩
1. Exchanged from Certificate No. 10. ↩
2. Exchanged from Certificate No. 1. ↩
3. Exchanged from Certificate No. 2. ↩
4. Exchanged from Certificate Nos. 3 and 20. ↩
5. Exchanged from Certificate Nos. 4 and 5. ↩
6. Exchanged from Certificate No. 4.↩
*. $12,309.45 for Leonard. ↩
**. $7,533.51 for Leonard.↩
2. Sec. 6501(e)(1)(A) General rule. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph - (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item.↩
3. Respondent uses this amount in his brief although it differs from the gain as determined in the notices of deficiency and alleged in his amendments to answer. Respondent conceded the dividend issue on brief.↩